WILLIAM B. LITTLETON ET AL. *v.* MAYOR AND
COUNCIL OF HAGERSTOWN ET AL.

*Special Legislation—Classification of Municipalities—Electric
Lighting Service—Issue of Bonds—City of Hagerstown.*

In order that a statute, applicable only to a class, shall not
fall within the constitutional prohibition of special legislation,
the members of the class must be all so situated as to require,
or at least justify, legislation different from that applicable
to others, and the basis of classification must bear a reasonable
relation to the subject-matter of the act.          p. 176

Even if the Legislature had the power to compel a munici-
pality to furnish light to its citizens, an entirely non-govern-
mental function, it could not compel it to do so beyond the
capacity authorized.                              p. 178

Since Acts 1900, ch. 75, does not indicate any legislative
intention to give the City of Hagerstown the exclusive right
of furnishing electric light and power to private consumers in
the city, it cannot be contended that that city is entitled to
special legislation on the subject, in order that it may be enabled
to fulfill a duty imposed by that act.              p. 179

That the City of Hagerstown has an excellent site for a pro-
posed electric plant to supply consumers, that the Public Service
Commission has refused to grant authority for such an under-
taking, that the existing plant has demonstrated its value by
giving low rates to consumers, or that the city has expended a
considerable sum on such plant, does not, nor do these facts to-
gether, furnish a valid basis for classification for the purpose
of special legislation relieving it from the requirements of the
Public Service Commission Law as regards the construction
of such a plant and the issue of bonds therefor.     p 179

A classification of cities for the purpose of legislation is
permissible even though it includes only one city, if that city
stands alone in a matter which furnishes a reasonable basis
for classification, and the basis has a reasonable relation to the
subject-matter of the act.                         p. 179

The separate classification of municipalities, which owned and operated, at the date of the creation of the Public Service Commission, a gas or electric plant supplying inhabitants of the municipality, as found in Acts 1924, ch. 48, exempting such municipalities from the general requirement of a permit from the commission for the erection of a new plant or the issuance of bonds, is arbitrary and unreasonable, and consequently insufficient to validate such exemption as against the constitutional prohibition of a special law for any case for which provision has been made by an existing general law.            p. 180

Likewise, the separate classification in said act, as exempt from the requirement of permits from the commission, of municipalities the voters of which vote in favor of municipal ownership of lighting or power plant, is arbitrary and unreasonable.                                            p. 182

Municipalities supplying public utilities are to be considered just as are other public service corporations similarly engaged, in relation to the Public Service Commission Law.        p. 181

The repeal and re-enactment of a general law with an amendment does not prevent the amendment being a special law in violation of the constitutional provision, where the momentary repeal of the general law is manifestly for the purpose of immediately passing the amendment, and the amendment would not be constitutional if passed as a separate proposition without the repeal.                                                   p. 183

*Decided March 9th, 1926.*

Appeal from the Circuit Court for Washington County, In Equity. (WAGAMAN, J.)

Bills by William B. Littleton and others against the Mayor and Council of Hagerstown and others, and by R. J. Funkhouser and others against the Mayor and Council of Hagerstown and others, consolidated by order of court. From a decree dissolving an injunction in the first-named case and dismissing the bills of complaint in both cases, the plaintiffs appeal. Reversed.

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Walsh, JJ.

*Alexander Armstrong,* with whom were *Piper, Carey & Hall on the brief,* for the appellants.

*A. S. Mason* and *Levin Stonebraker,* for the appellees.

Adkins, J., delivered the opinion of the Court.

The bill of complaint in this case was filed in December, 1922, by appellants as taxpayers of Hagerstown, against the Mayor and Council of Hagerstown and the board of street commissioners. The bill alleges that the said city, under the management and control of said board, is now, and has been for a number of years last past, manufacturing electric current for the lighting of the streets and avenues of said city, and for the commercial purpose of selling said current to the residents of said city for lighting and power purposes; that under and by virtue of an alleged authority conferred by chapter 40 of the Acts of 1920, the Mayor and Council of Hagerstown has directed and authorized the said board of street commissioners to erect a new electric light plant in Hagerstown, designed and intended for the manufacture of electricity for other than municipal purposes, to wit, for the sale to the residents and citizens of Hagerstown for lighting and power purposes, without having first obtained from the Public Service Commission of Maryland a certificate of authority therefor, and is about to issue and offer for sale bonds to the amount of $300,000 for the purpose of the erection of said plant without having first obtained a certificate of authority therefor from said commission; that the said board is about to make contracts for the erection of said new plant for the purposes aforesaid; that neither said city nor said board was given authority to build, maintain, or operate said new plant for manufacturing electric current for lighting other than for municipal purposes, without first having obtained a certificate of authority from said commission, by said Act of 1920, nor by any other Act of the Gen-

eral Assembly, but under chapter 180 of the Acts of 1910, and amendments subsequent thereto, they are required to obtain such certificate in order to build, maintain or operate an electric light plant, for supplying light for other than municipal purposes; that neither the said Mayor and Council of Hagerstown, nor the said board, has applied for or intends to apply for such certificate; that the building of such plant, or the making of such contracts, or the issuing of said bonds, without such certificate, will increase the burden of complainants and all other taxpayers of Hagerstown, and will be an illegal and unwarranted exercise of power. The prayer of the bill is for injunction and for further relief.

The defendants' demurred and the demurrer was overruled. On appeal the order overruling the demurrer was affirmed at the April term, 1923. *Mayor and Council of Hagerstown v. Littleton,* 143 Md. 591. But it was held that the injunction should be dissolved on the obtaining by the city of a certificate of authority from the Public Service Commission.

The only provision in the original act (Acts 1910, chapter 180), creating the Public Service Commission, applicable to municipally owned gas and electrical works, was contained in section 447 of article 23 of the Code of 1912, as follows:

"No municipality, except the Mayor and City Council of Baltimore, shall build, maintain and operate for other than municipal purposes, any works or systems for the manufacture and supplying of gas or electricity for lighting purposes without a certificate of authority granted by the commission. If the certificate of authority is refused, no further proceedings shall be taken before the commission, but a new application may be made therefor after one year from the date of refusal."

But in 1914 a new section, 413A, was added to article 23 of the Code, which provided that:

"Every municipal corporation of the state engaged in the business of manufacturing and supplying, or of supplying gas and electricity for other than municipal purposes shall be included in the terms 'Gas Corpora-

tion' and 'Electrical Corporation' as defined in the next
preceding section of this sub-title, and shall be subject,
as other gas and electrical corporations are, to the pro-
visions of this sub-title."

That amendment, of course, made applicable to municipal
corporations, furnishing gas and electricity for other than
municipal purposes, sections 445 and 448 of article 23 of
said Code, as well as section 447. Section 445 (section 388,
article 13, Code 1924) gave the commission supervisory and
regulatory powers.

Section 448 (section 392 of article 23, Code 1924) pro-
vided for the issue of bonds by an electrical corporation
"when necessary for the acquisition of property, the con-
struction, completion, extension or improvement of its plant
or distribution system," on securing from the commission an
order authorizing such issue.

The decision in *Hagerstown v. Littleton, supra,* affirm-
ing the order of the lower court granting an injunction, was
based on these provisions.

Pursuant to that decision application was made to the
commission for authority to issue the bonds and was refused
for reasons set out in a very able opinion. This was in
December, 1923. Shortly thereafter the Legislature of 1924
passed an act, chapter 48 of the Acts of that year, repealing
and re-enacting with amendments said sections 413A and
447, the only changes being that to section 413A were added
these words:

"except that the provisions of sections 445 and 448
of article 23 of the Annotated Code of Maryland (Code
1912) shall not apply to such municipalities as owned,
operated and maintained on and prior to the date of
the creation of the Public Service Commission, and
presently own, operate and maintain a gas or an elec-
trical plant devoted in whole or in part to the supply-
ing of the inhabitants of such municipalities with gas
or electricity, for lighting or power purposes, nor shall
said sections 445 and 448 apply to the Mayor and Coun-
cil of Hagerstown, nor to such municipality or munici-

palities having a·population in excess of 20,000, and
an assessable basis in excess of $15,000,000, when the
majority of voters of such municipality or municipal-
ities shall vote in favor of municipal ownership of
lighting or power plant."

And in section 447 were incorporated just before the last
sentence: "Provided, however, that this section shall not
apply to such municipalities as owned, operated and main-
tained," etc., as in the exception quoted above. The amend-
ment to this section also permitted, in event of refusal of an
application, a new application to be made in six months in-
stead of twelve. It was also provided "that in the event any
part of provision of this act be held invalid, the same shall
not affect in any way the validity of the remaining parts
and provisions."

In the same year the Legislature passed another act, chap-
ter 380, which recites chapter 40 of the Acts of 1920, and
authorizes the issue of $300,000 of bonds in lieu of those
authorized by the earlier act, the proceeds of which to be
used for constructing, erecting and maintaining a city elec-
tric light plant for Hagerstown, using such portions of the
old plant as may be advantageous and to remodel the entire
distribution system of the city light plant.

In September, 1924, after the passage of the said acts
of that year, the said board asked and were given leave by
the court to file an answer to the bill of complaint.

In its answer the board recites said acts of 1920 and 1924;
denies that the building of a new plant for the purposes con-
templated and as authorized or the entering into any con-
tracts therefor, or the issuing of any bonds to pay therefor
without a certificate or authority being first had and ob-
tained from said commission, will or would be an illegal
and unwarranted exercise of power, increasing the burden
of the complainants or any other taxpayer of said munici-
pality, "said certificate of authority not being required by
reason of the several acts of assembly hereinbefore referred
to"; and averring that said municipality has for more than

twenty years continuously owned, operated and maintained, and presently owns, operates and maintains an electric plant devoted to the purpose of manufacturing electric current for the purpose of lighting the streets and public places of said city, and the sale thereof to residents of Hagerstown for light and power purposes, and that pursuant to chapter 40 of the Acts of 1920, at a duly held municipal election, at the time of which said election this said city had a population in excess of 20,000, and an assessable basis in excess of $15,000,000, a majority of votes cast was in favor of municipal ownership of lighting and power plant. There was also filed by the defendants a motion to dissolve the injunction.

On January 25th, 1925, another bill of complaint was filed by certain taxpayers of Hagerstown against the Mayor and Council of Hagerstown, Daniel E. Downer, tax collector, and the Board of Street Commissioners, in Cause No. 9860, which by order of court was consolidated with the original case.

In the new bill all the proceedings in the former case are recited and it avers that application to the Public Service Commission has been made by the Mayor and Council of Hagerstown for authority to erect and maintain its proposed new plant and to issue bonds, and refusal by the commission, and that no court proceedings have been instituted to have the order of the commission declared unlawful or unreasonable; that the defendants are about to construct said plant without obtaining authority from the commission; that the Mayor and Council of Hagerstown intends to pass an ordinance providing for the issuance of bonds, and to issue same, and the board of street commissioners intends to apply the proceeds thereof towards the erection of said plant, without obtaining authority, as required by law; that said new plant will not be in any sense an extension of the plant constructed pursuant to chapter 75 of the Laws of 1900, but on the contrary will be an entirely distinct and separate plant; that the Mayor and Council of Hagerstown caused chapter 48 of the Acts of 1924 to be passed for the declared purpose of

enabling it to issue said bonds and construct said plant without obtaining said authority; that Hagerstown and Berlin are the only municipalities which fall within the first exception in section 447, but that, between the date of the creation of the Public Service Commission (April 5th, 1910) and the enactment of section 413A, at least two municipalities in the state, namely Centreville and Thurmont, acquired, operated and maintained municipal electric plants "devoted in whole or in part to the supplying of the inhabitants" of such municipalities with electricity for lighting purposes, and that said plants have at all times since their acquisition as aforesaid been owned and operated by Centreville and Thurmont and devoted to the purposes aforesaid; that a majority of voters of Hagerstown have not voted in favor of municipal ownership of lighting and power plant as provided in the third exception in section 413A or section 447; that all of the exceptions in section 413A and section 447 are special laws for cases for which provision has been made by existing general law, namely, the provisions of the Public Service Commission Law to which they purport to apply, and are unconstitutional and void, being in conflict with that part of section 33 of article 3 of the Constitution of Maryland which provides that "the General Assembly shall pass no special law for any case for which provision has been made by an existing general law"; and that the third exception is void also for the additional reason that it involves an unconstitutional delegation of legislative powers; that said exceptions are also in conflict with that part of section 1 of the Fourteenth Amendment of the Constitution of the United States, which provides that no state shall deny to any person within its jurisdiction the equal protection of the laws; that section 439 of article 23 of the Code (1912), which applied to all corporations subject to the provision of the Public Service Commission Law, was not made inapplicable to the Mayor and Council of Hagerstown by chapter 48 of the Laws of 1924, and that section prohibits the issuing of bonds without authority from said commission; that said

new plant is about to be constructed on land which was conveyed to the Mayor and Council of Hagerstown in consideration of $4,300, which sum was paid in full by the sewerage commission of Hagerstown out of funds in its hands exclusively applicable to the construction of a service system in Hagerstown, and required by law to be so used; that no ordinance authorizing said purchase was ever passed by the Mayor and Council of Hagerstown, or submitted to the qualified voters of said city, as required by section 152 of article 22 of the Code of Public Local Laws of Maryland, and that said land has, therefore, not been lawfully acquired by said city.

The prayer of the bill is for an injunction to restrain the erection of said plant, the expenditure of public funds, or the incurring indebtedness, in connection with the proposed issue and sale of bonds; the issuing of said bonds and the levying of taxes to pay the interest thereon; and that chapter 48 of the Acts of 1924 be declared unconstitutional and void; and for further relief. There were filed with this bill of complaint, as exhibits, the deed of the land referred to and the opinion and order of the commission. An order *nisi* was passed on the bill.

The answer of the defendants avers: That the city has been engaged in furnishing electricity for its own purposes and to its citizens for more than twenty-four years, and that the operation of its plant has inured to the benefit of its citizens and taxpayers by affording them lower rates for electric current than that of other municipalities similarly situated, and in the lighting of its streets and public places without cost or charge; that the determining factor in the decision of the commission, viz: the elimination of all competition and the creation of a monopoly, "is at variance with article 41 of the Constitution of Maryland, which provides 'that monopolies are odious, contrary to the spirit of free government, and the principles of commerce, and ought not to be suffered' "; admits that no further application has been made to the commission since said order and no court

proceedings have been taken to have said order declared unlawful or unreasonable, but avers that said commission is without authority in the premises, the necessity for application to the commission having become unnecessary by reason of chapter 48 of the Acts of 1924; avers that the proceeds of said bonds are to be used in the construction of said new plant, as well as the repair of the present distribution system; that heretofore and prior to the time of the issuing of the injunction under the first bill of complaint the board of street commissioners expended over $30,-000 from the lighting fund in connection with the grading, construction of foundations, placing of railroad switches and other work done on and to the approaches to a certain lot in said city, which was acquired for the purpose of the construction of a municipal light plant, and that they intend, if the injunction is dissolved, to expend further sums from said fund, which is now more than $100,000, in furtherance of the construction of said municipal plant and the equipment thereof, as well as for the repair and maintenance of the distribution system now owned by said city, the construction of said plant and the equipment thereof having become necessary and imperative by reason of the increase of business and needs of the citizens and the lighting of the streets and public places of said city, the present plant being inadequate for such purposes, and being located where further development thereof cannot be economically made on account of an inadequate supply of water, the proposed plant to be interconnected with the existing plant to be operated in connection therewith, and the said two plants to constitute and be a part of a municipally owned system; admits that it is the purpose of defendants to construct the proposed plant on the lot mentioned in the bill of complaint; avers that in the acquisition of said lot the City of Hagerstown, acting through the sewerage commission, the board of street commissioners and the water commissioners, acquired certain other lands and rights from the grantor, amongst which were the rights of said grantor in and to the waters of the

Antietam Creek, for which said right the sum of $25,000
was paid in equal portions by each of said boards, the under-
standing being at the time of said acquisition that the board
of street commissioners should have the right to occupy and
build the proposed electric light plant upon the lot acquired
by said deed; denies that an ordinance authorizing said
purchase is required, the said board of street commissioners
being vested with ample power and authority to acquire said
land and rights for said purposes; denies that said land was
unlawfully acquired by said city.

An agreed statement of facts appears in the record, by
which it appears that the city has operated its plant for more
than twenty years, furnishing current for municipal and
private uses; that from the erection of the plant in 1900 no
tax was levied for the lighting of the streets and public
places of said city from 1913 to 1917, inclusive; that in
the year 1918 and every year thereafter, including 1922, a
levy of ten cents was made; that in addition thereto there
was levied for electric light plant, in 1919 five cents, in 1920
five cents, in 1921 and 1922 each ten cents; a comparative
statement of cost of lighting city and receipts from each
levy from 1902 to 1924, inclusive, showing excess of such
costs over receipts from tax levies of $27,487.42; that dur-
ing said years $37,000 of bonds and interest have been paid
from the earnings of said plant, and there are now $39,000
unpaid, and said plant now has to its credit, in the lighting
fund, $117,000; that the present city officials will testify
that, so far as they now know or intend, any expenditure for
the construction of the proposed plant will not be from the
general public funds of said city, but only from the funds
derived from the sale of bonds as authorized by chapter 40
of Acts of 1920 and chapter 380 of Acts of 1924, and from
the lighting fund, now in excess of $117,000; that prior to
the filing of the first bill of complaint the board of street
commissioners had expended, on the site acquired for the
purpose of the construction of the proposed electric light
plant, an amount in excess of $30,000, in connection with

the grading, construction of foundations and railroad sidings and other work done on and to the approaches to said site; that the capacity of the present plant is in the judgment of the defendants, and they have been so advised by competent engineers, now inadequate to supply the electric current necessary to meet the demands of its private customers and at the same time to light the streets and public places of Hagerstown, and the location of the present plant is such that on account of an inadequate supply of water it cannot be economically enlarged; that the .proposed new plant when erected is to be connected with the present plant by transmission wires, and the present plant will be used as an auxiliary to the plant until the same is in full operation and will warrant the discontinuance of the present plant and its salvaging; that in the year 1900 the city, which then had a population of 13,000, and an assessable basis of less than $15,000,000, voted for municipal ownership of lighting plant, the vote being 1,882 for and 662 against; that in 1920 the city voted for issuing of bonds to construct a new city electric light plant, the vote being 1,636 for and 1,259 against, the population then being over 20,000 and the assessable basis over $15,000,000; the facts as alleged in the answer about the proposed site; that the duties of the sewerage commission are practically at an end and upon completion of their work all property of any kind acquired by them is to be turned over to the Mayor and Council, but the funds now in the hands of said commission are inadequate to complete said sewerage system or to pay obligations already incurred for sewerage purposes; that Hagerstown with a population of 28,000 and Berlin with less than 1,400 were the only municipalities falling within the first exception, and that between April 5th, 1910 (when the Public Service Act was passed), and the enactment of section 413A, Centreville, with about 1,800 people, and Thurmont, with about 1,300, acquired and operated municipal electric light plants.

Schedules of rates for electric current of several neighboring cities are also filed.

Some of the facts found by the Public Service Commission are: Capacity of present city plant, 2,000 K. W. capable, according to testimony of defendants' engineers, of being increased by the use of funds now on hand to 3,500 K. W.; that this will supply all purely municipal needs for a number of years, as well as the present demand and the looked for increased demand of private customers for several years to come; admission by city that its "prime object" is to take care of future business rather than satisfactorily supply present demands; present bond issue contemplates a plant of but 3,000 K. W. working capacity, but the city has in mind additional bond issues in the next few years and an increase of capacity to 8,000 K. W. with the ultimate aim of a 15,000 K. W. plant; that the Potomac Public Service Company and its subsidiary Maryland corporations have in recent years constructed a plant of 9,000 K. W. capacity at Security, near Hagerstown, have more recently installed a first unit of 15,000 K. W., with provisions for additional units, at Williamsport, have recently acquired the Cumberland plant of 9,000 K. W.; have hydro-electric plants on the Potomac, and generating units on the Shenandoah and in West Virginia; that these plants of an approximately 50,-000 K. W. capacity are now in process of interconnection; that the Hagerstown plant at present furnishes light and power for municipal purposes, and also to customers in and around the said city in competition with the Potomac Public Service Company; that the latter company appears from the investigation of the commissioner's engineers to be selling considerably more electricity in Hagerstown than the municipal plant.

This appeal is from a decree dissolving the injunction in the earlier case and dismissing the bills of complaint in both cases.

In the preceding statement the questions involved have been fully set out. The most important is that of the constitu-

tionality of chapter 48 of the Acts of 1924. The validity of that act is challenged as violating section 33 of article 3 of the Constitution, which provides: "And the General Assembly shall pass no special law for any case for which provision has been made by an existing general law."

That each of the exemptions made by said act is obnoxious to said constitutional inhibition is apparent, unless it operates upon all within a class, the members of which are all so situated as to require or at least justify legislation different from that applicable to others, and the basis of classification bears a reasonable relation to the subject-matter of the act.

"The true principle of classification requires something more than a mere designation by such characteristics as will serve to classify, for the characteristics which thus serve as the basis of classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. It must be formulated upon a necessity or propriety for legislation differing from the legislation appropriate to other classes, and this necessity or propriety must spring from some manifest peculiarities not only distinguishing one class from another, but demanding or at least justifying legislation for each class separately that would be useless or detrimental to the others. A statutory classification not grounded on any reasonable or practical necessity, and which effectuates an evasion of the constitution, will not be upheld." 1 *Dillon, Municipal Corporations* (5th Ed.), sec. 148.

It is necessary therefore to test each of the three classifications made by said act by the rule above quoted from Dillon and recognized practically everywhere.

It is difficult to deal with the classifications separately, because it seems obvious that the single purpose in formulating each of them was to exempt Hagerstown from the operation of the Public Service Commission Law. Else why should there be a separate classification for one city in such an act? And why should the basis of the other two classi-

fications be so narrow as to admit, at all, only one small town in addition to Hagerstown in the one case; and in the other, to provide, at the present time, for Hagerstown alone (assuming that city has met its requirements)? Indeed, the learned chancellor, in his opinion, ignores the other two and discusses only the classification which exempts Hagerstown by name. And that is the one which is considered at length by counsel for appellee.

It is the object to be accomplished and not the form of the act which determines the validity of a classification. *Thomas v. City of St. Cloud* (Minn.), 90 Minn. 477; *State v. Logan,* 268 Mo. 169; 6 *R. C. L.,* page 419; *Baltimore v. United Rwys. Co.,* 126 Md. 39.

We will consider first, therefore, the exemption which expressly applies to Hagerstown alone.

Appellees rely upon *Baltimore v. United Rwys. Co.,* 126 Md. 39. In that case it was said: "There is a wide difference between a special act, within the meaning of the Constitution, and an act for special purposes," and "in considering the constitutionality of an act it is proper that we keep in mind the conditions existing at the time of its passage."

And counsel for appellees in their brief set out the following as the unusual conditions surrounding Hagerstown and which, they argue, bring it within the ruling of the case relied on, viz:

(a) Duty imposed by Legislature by chapter 75 of the Acts of 1900 to light the streets and public places of the city only from a municipally owned plant.

(b) Alleged mandatory requirement of that act as to furnishing to the citizens of electric light service.

(c) Inadequacy of present plant to supply existing demands, and inability from that cause to obey the alleged legislative mandate.

(d) Lack of water supply to justify development of plant at present location.

(e) Absence of above legislative requirement as to any other city.

(f) Adaptability of proposed site, by reason of abundant
water supply, and its location adjacent to the tracks of the
Baltimore and Ohio Railroad Company.

(g) Expenditure of $30,000 by the city on said lot mak-
ing preparation for the proposed new plant, before any objec-
tion was made.

(h) Necessity of legislation by reason of the refusal of the
Public Service Commission to grant authority.

(i) Demonstrated value of existing plant to the city and
the citizens.

(j) Enjoyment by citizens of lower rates during the oper-
ation of said plant than those prevailing in towns and cities
in the vicinity.

(k) Saving to the city in lighting streets and public places
of $27,000 during the operation of the plant, this being the
difference between the actual cost of production of the cur-
rent, and the amount of taxes levied for the plant.

The question is: Do any of these conditions, or all of
them together, put Hagerstown in a position by reason of
which it can reasonably be held that, taking into considera-
tion the purposes of the general law, legislation applicable
to Hagerstown alone is necessary or justifiable?

As to (a) there is nothing in the record to indicate that
any enlargement of the present plant is necessary to enable
it to produce an abundance of current for purely municipal
purposes.

(b), (c), (d) and (e). Even if it could be held that the
Legislature had the power to compel a municipality to fur-
nish light to its citizens, an entirely non-governmental func-
tion (and such power seems to be inconsistent with the
principles announced in *Revell v. Annapolis,* 81 Md. 1;
*County Commrs. of Talbot County v. County Commrs. of
Queen Anne County,* 50 Md., at page 258; *Balto. & Eastern
Shore R. Co. v. Spring,* 80 Md. 510; *Gulowski v. Balti-
more,* 127 Md. 502; *Wallace v. Baltimore,* 123 Md.
638), it certainly could not compel it to do so beyond the
capacity authorized. *Re Ohio Fuel Supply Co.,* Pub. Util.

Rep. 1921A, 628; *Brown v. Gerald,* 100 Me. 351; *Wyman on Public Service Corporations,* sec. 271.   The contention that the city is entitled to special legislation in order to enable it to fulfill a duty imposed upon it by chapter 75 of the Acts of 1900 seems to be disposed of by what was said in *Hagerstown v. Hagerstown Rwy.,* 123 Md., at page 197. It was there held that "there is nothing in that act to indicate any intention of the Legislature to give the city the exclusive right to furnish electric light and power to *private consumers* in the city * * *."   See also *Hagerstown v. Littleton,* 143 Md., at page 143.

(a), (b), (c), (d) and (e) being disposed of, there does not seem to be anything in the other alleged conditions which have such relation to the subject-matter of the legislation, or, indeed, so to distinguish Hagerstown from other cities, as to justify a separate classification.

That it has an excellent site for the proposed plant; or that the commission refused to grant authority; or that the present plant has demonstrated it value to the municipality and its citizens by giving them low rates; or even that the city had spent $30,000 on the site of the proposed new plant before objection was made (there being no element of estoppel in this case), or all these facts together, do not seem to furnish a valid basis for distinction or classification.

It is not that the classification now being considered includes only one city.   That is permissible if (a) it stands alone in a matter which furnishes a reasonable basis for classification, and (b) the basis has a reasonable relation to the subject-matter of the act.   There could be no doubt about the validity of such a classification in the instance considered by the Court in *Baltimore v. United Rwys. Co., supra.*   But the trouble with the present case is that Hagerstown was not so situated.

The only reason that can even plausibly be urged by Hagerstown, that could not be easily acquired for itself and used as an argument for exemption by any other municipality, is that Hagerstown for a long time, and successfully, has

been running a municipal plant. But there is nothing to prevent its continuing to do so without any special legislation. According to the city's own showing it is not hampered in any way in meeting economically all the purely municipal needs and a large private business besides. The only complaint it makes is that it is not permitted to spread out and do a much larger private business in conjunction with another plant already in existence, and abundantly equipped to furnish the additional service required, without anything to show that the other plant is not giving equally good and economical service to those whom the city cannot serve by reason of its limited capacity. It is just such wasteful duplication which it is one of the principal functions of the Public Service Commission to prevent. However, if the commission acted arbitrarily and without justification, the city's remedy was by resort to the courts and not to the Legislature.

The first and third classification will now be considered.

The first includes "such municipalities as owned, operated and maintained at and prior to the date of the creation of the Public Service Commission, and presently own, operate and maintain a gas or electric plant devoted in whole or in part to the supplying of the inhabitants of such municipalities with gas or electricity, for lighting or power purposes."

It is agreed that only Hagerstown and Berlin are in this class. The classification in absolutely arbitrary and without a reasonable basis. The only reason for it that might occur to any one (although that would not be a valid one) is that plants established before the commission was created ought not to be subject to its control. But the commission had no control of bond issues by a municipality owning an electric plant until section 413A was passed in 1914 (section 347 of article 23 of Code of 1924). Between the creation of the commission in 1910 and the enactment of section 413A in 1914, Centreville and Thurmont erected electric light plants of the character mentioned in this classification; so that while they did not exist at the time of the creation of the

commission, they did exist before the commission was given any control over the issuing of bonds by municipalities for the erection of such plants. But they were excluded from the class. Either they were improperly excluded or else the only even plausible basis for the classification did not enter into the consideration of the Legislature. Besides, the general law in force at the time of the enactment of chapter 48 of the Acts of 1924 included section 413A, which provided in part as follows: "Every municipal corporation of the state engaged in the business of manufacturing and supplying, or of supplying, gas and electricity for other than municipal purposes shall be included in the terms 'Gas Corporation' and 'Electrical Corporation' as defined in the next preceding section of this sub-title, and shall be subject, as other gas and electrical corporations are, to the provisions of this sub-title." Any attempted classification, therefore, on the basis of going concerns at a given date, including only municipalities operating "a gas or electric plant, etc.," at that date and excluding other corporations in similar circumstances, is an incomplete classification.

In *State v. Wood,* 49 N. J. L. 85 (affirmed in 50 N. J. L. 175), it is said: "A law is to be regarded as general when its provisions apply to all objects of legislation distinguished alike by qualities and attributes which necessitate the legislation, or to which the enactment has manifest relation. Such law must embrace all, and exclude none, whose condition and wants render such legislation equally necessary or appropriate to them as a class." See also *Thomas v. City of St. Cloud,* 90 Minn. 477; *State v. Logan,* 268 Mo. 169; *Philadelphia County v. Sheehan,* 263 Pa. 449; *Township of Lodi v. State,* 51 N. J. L. 402, 6 L. R. A. 56.

That municipalities supplying public utilities are to be considered just as are other public service corporations similarly engaged, in relation to the Public Service Commission Law, is established by *Crisfield v. Chesapeake and Potomac Telephone Co.,* 131 Md. 444; *Westminster v. Consolidated Public Utilities Co.,* 132 Md. 374; *Hagerstown v. Littleton,*

143 Md. 591. See also *Wyman on Public Service Corpora-tions,* vol. 1, sec. 218.

The third classification is as follows: "Such municipality or municipalities having a population in excess of 20,000 and an assessable basis in excess of $15,000,000 when the majority of voters of such municipality or municipalities, at a duly held election, shall vote in favor of municipal ownership of lighting or power plant."

It looks like an arbitrary classification to say that cities with over 20,000 population and an assessable basis of $15,-000,000 may issue bonds without authority of the commission, and those with half that population and assessable basis may not. A small issue of bonds in the smaller city would seem to be as safe as a relatively larger bond issue would be in the larger city; and the regulation against duplication of service would seem to be as necessary in the one case as in the other.

But, however that may be, there certainly can be no reason for a distinction (which has any relation to exemption from commission regulation) between cities voting for municipal ownership and those not so voting, all being duly authorized to erect and maintain electric light plants. Apart from any other reason, such unreasonable discrimination invalidates the classification.

"A classification of cities, towns and villages by population cannot be arbitrarily adopted as a ground or reason for investing some of them with powers denied or not granted to others, if, though there be a difference in population, there is no difference of situation or circumstances of the municipalities placed in the different classes, and the difference in population has no reasonable relation to the purposes and objects to be attained by the statute * * *. When population is but one of two or more incidents which are used in combination in the construction of a class, the classification is usually held to be invalid." 19 *R. C. L.,* pages 743 and 744. See also *People v. Fox,* 247 Ill. 402; *Lowry v. Scott,* 110 Minn. 98; *State v. Simon,* 53 N. J. L. 550; *Wilson v. Ram-*

*sey,* 86 N. J. L. 263; *Ashworth v. Pittsburgh Railways Co.,* 231 Pa. 539; *Dillon, Municipal Corporations* (5th Ed.), sec. 151.

After the most careful examination and consideration we can find no reasonable basis for any of the classifications. It seems to be simply a case where, not having obtained what it desired at the hands of the commission, the city appealed to the Legislature to exempt it from the control which all other public service corporations, including all municipalities (except Baltimore City) operating such plants, are by the express provisions of the general law obliged to submit to. If the city conceived that the commission acted arbitrarily, or exceeded its authority, it could have sought relief in the courts.

We do not find any merit in the contention of appellees, that the repeal and re-enactment of a general law with an amendment prevents the amendment being a special law in violation of the constitutional provision, where, as here, the momentary repeal of the general law is manifestly for the purpose of immediately passing the amendment, and where the amendment would not have been constitutional if passed as a separate proposition without the repeal. To hold otherwise would be to permit in any case a virtual disregard of the constitutional inhibition by indirection.

If the Mayor and Council of Hagerstown had been excepted in the original act, as was the Mayor and City Council of Baltimore, a different question would be presented. At that time there was in force no general law on the subject.

The conclusion we have reached on the questions already considered makes it unnecessary to decide several other questions suggested by appellants.

> *Decree reversed and case remanded that a decree may be passed in accordance with the views expressed in the aforegoing opinion, with costs to appellants.*

Offutt and Digges, JJ., dissent.

OFFUTT, J., filed the following dissenting opinion.

Because of the long and conscientious consideration which it has had, and because of my confidence in the careful and able judge who wrote it, it is with considerable reluctance that I feel constrained by my convictions to express the following dissent from the opinion of the court in this case.

The municipality of Hagerstown was authorized by chapter 381 of the Acts of 1898, and chapter 75 of the Acts of 1900, to build and operate a plant to furnish electric current to the citizens of that city for lighting purposes, and to issue bonds therefor. The bonds were issued and the plant built, and to quote from the opinion of the lower court, which is supported by the record:

"The plant built under the authority of these acts has been in successful operation for more than twenty years, lighting the public places of the city and furnishing electric current to its citizens for light and power purposes. At the time of the establishment of this plant Hagerstown had a population of 13,000 and now has an excess of 28,000. The city has outgrown the plant and it is no longer adequate to supply its own needs and those of its customers. The location of the present plant is such that it cannot be enlarged with advantage. It desires to build a new plant on a site near a plentiful supply of water.

"Under these circumstances chapter 404 of the Acts of 1920 was passed. By its provisions the city was authorized to issue $300,000 of its bonds for the construction of a new manufacturing plant and the remodeling of its distribution system.

"On February 7th, 1923, an injunction was issued enjoining the construction of the new plant. The theory of the bill of complaint upon which the injunction issued was that the City of Hagerstown had no authority to issue its bonds nor construct its proposed plant without first having obtained a permit and certificate of authority from the Public Service Commission. The Court of Appeals passed upon this case in *Littleton v. Hagerstown,* 143 Md. 591. It was

there held that the city was fully authorized to issue its bonds and to construct a new plant for the manufacture and distribution of electric current for municipal purposes, as well as for sale to its citizens for light and power purposes. It sustained the decree of this court, held that the permit and certificate of authority were necessary and directed that the injunction should be dissolved 'upon the granting of the permit by the Public Service Commission.'

"Thereafter application to the Public Service Commission for the permit was made and denied."

It further appears: "That the capacity of the present municipal light plant of Hagerstown is, in the judgment of the defendant, and they have been so advised by competent engineers, now inadequate to supply the electric current necessary to meet the demands of its private customers and at the same time to light the streets, avenues, alleys and public places of Hagerstown, and the location of the present plant is such that on account of an inadequate supply of water it cannot be economically enlarged. That the proposed new plant when erected is to be connected with the present plant by transmission wires, and the present plant will be used as an auxiliary to the plant until the same is in full operation and will warrant the discontinuance of the present plant and its salvaging." And it also appears that the municipality had, before the bill in this case was filed, expended thirty thousand dollars in preparing and grading a lot owned by it for the erection of the new plant, which sum will be a total loss as a result of the opinion filed in this case.

By chapter 404 of the Acts of 1920, the City of Hagerstown was authorized to issue bonds to the amount of $300,-000 to build a new plant and to improve its service lines. Upon the application of certain taxpayers that issue was, as a result of an opinion of this Court in *Littleton v. Hagerstown,* 143 Md. 591, enjoined, unless it should be approved by the Public Service Commission. That commission, after a hearing, refused to permit the issue on the apparent ground

that they apprehended that the money would be spent not only for present needs, but for future demands, and would therefore deprive the citizens of Hagerstown of certain prospective blessings which the commission anticipated would flow from the service of the Potomac Public Service Company and its subsidiary Maryland corporations, a late-comer in the Hagerstown market for electric current, if it were not interfered with by municipal competition. It therefore nullified the Act of 1920, in order that the Potomac Company might be free from apprehensions of possible competition from the municipality of Hagerstown in supplying current to the citizens thereof.

In that situation the General Assembly of Maryland, in 1924, adopted the act under consideration in this case, which repealed and re-enacted with amendments section 413A and section 447 of article 23 of the Code of P. G. L. of Md. so as to exempt from the operation of sections 445 and 448 of that article (392 and 388 of article 23 of the present Code), "such municipalities as owned, operated and maintained on and prior to the date of the creation of the Public Service Commission, and presently own, operate and maintain a gas or an electrical plant devoted in whole or in part to the supplying of the inhabitants of such municipalities with gas or electricity, for lighting or power purposes * * * the Mayor and Council of Hagerstown * * * and such municipality or municipalities having a population in excess of 20,000, and an assessable basis in excess of $15,000,000, when the majority of voters of such municipality or municipalities shall vote in favor of municipal ownership of lighting or power plant." Acts 1924, ch. 48. And at the same session chapter 380 was adopted, which supplemented the Act of 1920 authorizing the municipality to issue bonds as stated above. The City of Hagerstown having declared that it proposed to issue such bonds under the authority of those acts, certain taxpayers of that city applied to the Circuit Court for Washington County for an injunction restraining the issue, on the

ground that the exemptions, provided by chapter 48 of the
Acts of 1924, constituted special legislation, and were,
therefore obnoxious to section 33 of article 3 of the Consti-
tution of Maryland, and were also obnoxious to section 1 of
the Fourteenth Amendment to the Federal Constitution, be-
cause they denied to the citizens of the state the equal pro-
tection of the law.

Before dealing with the precise question upon which this
case turns, it may be useful to refer briefly to the history
of the Public Service Law of the State and the changes
effected by chapter 48 of the Acts of 1924.

The basic statute, chapter 180 of the Acts of 1910, in
section 33, provided in part that: "No municipality, except
the Mayor and City Council of Baltimore, shall build, main-
tain and operate for other than municipal purposes any
works or systems for the manufacture and supplying of gas
or electricity for lighting purposes without a certificate of
authority granted by the commission." By chapter 445 of
the Acts of 1914 a new section was added, known as 413A,
now codified as section 347, C. P. G. L. of Md., which in
part provided: "Every municipal corporation of the state en-
gaged in the business of manufacturing and supplying or
of supplying gas or electricity for other than municipal pur-
poses shall be included within the terms 'Gas corporation'
and 'Electrical corporation,' as defined in the next preceding
section of this act, and shall be subject as other gas and
electrical corporations are to the provisions of this act." If
that act, to the extent of any inconsistency, repealed section
33 of the Acts of 1910, now codified as section 390 of article
23, C. P. G. L. of Md., then every municipal corporation
in the state, including the City of Baltimore, supplying elec-
tric current for any other than municipal purposes, came
under the jurisdiction of the Public Service Commission.
If it did not repeal that section, then the statute only ap-
plied to such municipal corporations as were engaged in
the business of supplying current for lighting and not to
those supplying it for power purposes. But however it be

construed, it is manifest that the Legislature, in terms or by necessary implication, in 1910, 1920 and 1924, attempted to classify municipal corporations, either by name, or as coming within certain designated conditions, as proper objects for exemption from the operation of certain provisions of the public service statutes, and the question and the sole question before us, is whether that was a proper and a valid classification.

In approaching that question we should not be embarrassed or affected by any spectre of municipal ownership, or by any question of enhancing the values of the securities, or of increasing the dividends of companies which have or may come into competition with the municipal plant. Desirable as it may be to improve the value of widely held securities, that ought not to be done at the expense of the taxpayers if, by doing it, those taxpayers are deprived of rights and privileges within the protection of the plain letter of the Constitution, or established law.

In the opinion of the Court, the exemption of the City of Hagerstown by name is invalid, because it is special legislation, and obnoxious to section 33, article 3, of the Maryland Constitution, and the other classifications are invalid because, among other reasons, they are but a subterfuge adopted by the Legislature to protect Hagerstown against an anticipated judicial decision declaring that it could not be exempted by name. I do not believe that any such considerations are material in considering the validity of the classifications adopted by the act, because I feel that, except for the most urgent and compelling reasons, the good faith of one branch of the State government should not be questioned by any other branch thereof, and I have been able to discover no such reasons in this case.

I will consider first that provision of the act which exempts Hagerstown by name from the operation of certain provisions of the Public Service Law. And what is said with respect to that city applies with equal force to the City of Baltimore, because, if it is true that municipal cor-

porations, engaged in the manufacture and sale of current for other than municipal purposes, cannot be exempted from the operation of the Public Service Law, then so much of the Act of 1910 as exempts the City of Baltimore from its operation is also invalid, and the policy of that great municipality, containing more than one-half of the people of the state, in dealing with a municipal matter so peculiarly local, must always be placed in the control of a board of state officials in whose selection it has no voice, so long as that board exists.

The constitutional provision referred to above provides that "the General Assembly shall pass no special law for any case for which provision has been made by an existing public general law." That provision has been construed in a number of cases by this Court, to several of which I will refer, the effect of which has been to establish the rule that a statute dealing with a special case involving facts which differentiate it from any existing public general law is not special legislation within the meaning of the provision referred·to, and whether that difference does exist is ordinarily a legislative question. The purpose and intent of the word "special," as used in that part of the Constitution, could never have been intended to embarrass and hinder the Legislature and the people of the state by preventing them from adopting legislation which in their judgment was essential to their welfare, but to prevent them from working hardship and injustice, by granting to special and selected persons privileges which were denied by the general law to others. And, therefore, where for special and adequate reasons it becomes expedient or desirable to exempt from the operation of a general law certain classes of persons who are not within the reason of the general law, such exemptions are regarded as a legitimate and proper classification and not special legislation.

These conclusions seem inevitable from the language and the decision of this Court in *Baltimore v. United Rwys. Co.,* 126 Md. 39. The question before the Court there was

whether an act exempting the United Railways and Electric
Company from the immediate application of a general law
imposing a "park tax" on all railways operating within the
City of Baltimore was a "special tax," and therefore in
conflict with the constitutional provisions referred to. There
is no doubt that conditions peculiar to the United Railways
Company, in reference to the subject-matter of that act,.
differentiated its status from that of other similar corpora-
tions in Baltimore City, and that the act itself was for the
benefit of the city.   Reasoning from those premises, the
Court held that, although the act exempted the corporation
by name from the operation of the general law, it was not
special legislation, but a legitimate and proper classification.
And in the course of the opinion it said: "One of the most
important reasons for the provision in the Constitution
against special legislation is to prevent one who has suffi-
cient influence to secure legislation from getting an undue
advantage over others. * * * 'Courts should not be too ready
to strike down such legislation on the theory that the same
thing could have been worked out under existing general
laws.   It is said in 6 R. C. L. 417 (section 413) : 'In cases
of state constitutional prohibition against the passage of spe-
cial laws where a general law may be made applicable, it is
a rule that the question of applicability is one for the legis--
lature to determine, and that such a statute will not be de-
clared unconstitutional, except where it clearly appears that
the legislature was mistaken in its belief that a general law
could not be made applicable.'  Again, on page 419 of that
volume, it is said: 'An important test in determining whether
legislation is special or general is to consider not the form
merely, but the substance.' * * * There is a wide difference
between a special act, within the meaning of the Constitu-
tion, and an act for special purposes. * * * Over and over
again has the Legislature granted special powers to corpora-
tions which were incorporated under the general laws and
in many such cases no question was or could have been
properly raised as to the validity of the legislation.    As

municipal corporations can only be chartered by special acts of the Legislature, there is much more reason for sustaining such legislation as is now before us than that affecting private corporations, and as we have already said, this act was unquestionably primarily intended for the benefit of the city."

The case of *Revell v. Annapolis,* 80 Md. 1, is also in point. It was held in that case that an act which provided for the construction of a school building in Annapolis, and directed the school commissioners of Anne Arundel County and the City of Annapolis to borrow money through an issue of bonds to pay for it, was not special legislation, because while under the general law the school commissioners had the power to build school houses, they had no power to issue bonds to pay for them. Just as in this case the Public Service Commission could under the general law authorize a municipality to build and operate an electric light plant, but it could not empower it to borrow money therefor. The cases of *Crisfield v. Ches. & P. Tel. Co.,* 131 Md. 444, and *Westminster v. Consol. Public Utilities Company,* 132 Md. 374, have been cited as in conflict with the rule which I have stated, but the cases are not analogous. In those cases the court was dealing with acts conferring upon the municipalities of Crisfield and Westminster respectively the power to fix the rates of certain public service corporations, and it was held in effect that, since that power had been conferred upon the Public Service Commission for the express purpose of securing fair and just rates throughout the state, based upon the application of definite standard rules and formulas, that the acts involved in that case constituted special legislation. But giving to those cases the utmost effect they can have, they amount only to this, that the Legislature cannot give to one corporation, municipal or private, the right to fix the rates of another corporation, when that right as to all corporations has been given by a general law to a single administrative board, and they are not authority for the proposition that the Legislature may not confer upon

municipal corporations the right to manufacture and sell within the corporate limits a public service at rates which in their judgment are fair and just.

It has been assumed that a municipal corporation, to the extent that it is. engaged in the sale of such a commodity as electric current to others, is to that extent a mere private corporation engaged in a public service. But it is rather more than that, for even in such work, it necessarily exercises and enjoys a part of the sovereignty of the State, for otherwise it would not have the power, which it undoubtedly has, to levy taxes for the expenses incident to rendering such service. But the power to levy taxes for any such purpose could not possibly be conferred upon them by such an agency as the Public Service Commission, and, for that reason alone, the Public Service Commission Law could not apply to them in the same way and to the same extent as to private corporations, and that difference is a sufficient ground for the separate classification of municipal corporations. Other reasons are that the citizens of municipal corporations have a different interest in the earnings thereof than they would have in those of a private corporation, and that its books are public records, but the real reason for the classification is that municipal corporations are mere governmental units operated by public officials created by the people, speaking either through the Legislature or the Constitution, which may also at will be dissolved by the same power which created them.

The conclusion that such a classification is proper was reached in *Barnes Laundry Co. v. Pittsburgh,* 266. Pa. 36, where it was said: "The legislature, by the law we are now construing, in effect divides corporations doing public service (according to the industrial sense in which that term is used in the act) into two kinds, namely: (1) corporations other than municipal; and (2) municipal corporations. This they had the right to do in order to accomplish the purposes of the act—no matter how much, under other and different circumstances, our law makers might be prevented from com-

passing such a classification. When rendering the same character of service as public service companies, municipalities for many purposes must be considered and treated like private corporations (as shown by the Pennsylvania cases before cited); but, for purposes of supervision over their internal management (which the present act repeatedly treats as necessarily involved in the control of rates), it can readily be seen they may justifiably be put on a different basis from ordinary public service companies, for, though engaged in rendering the same kind of service as the latter, and entitled to derive therefrom a just gain (*Jolly v. Monaca Boro.,* 216 Pa. 345, 348-349; *Wagner v. City of Rock Island,* 146 Ill. 139, 154; *Farnham on Waters and Water Rights,* par. 162, p. 855), municipalities are supposed to act primarily for the public good—not to earn dividends; moreover, they are financed along quite different lines from other corporations, and managed by popularly elected officers, who, as just said, are presumed to act for the public weal and, when they fail to do so, may be turned out by their constituents at stated intervals. These considerations, with others which may readily be called to mind, account for and justify the omission of municipal corporations from the general application of our Public Service Company Act."

In *Springfield Gas & El. Co. v. Springfield,* 292 Ill. 236, the facts were these: "Appellee, the City of Springfield, owns and operates an electric light plant, produces electricity for its own use, and sells electricity not required for its purposes to private consumers at about one-half the cost for which it can be procured from other sources. Appellant is a private corporation engaged in the production and sale of electricity in the City of Springfield, and has complied with the provisions of the Public Utilities Act." The appellee had not complied in any particular with the terms of that act, and the appellant sought to have it restrained from selling electricity until it had complied therewith. The injunction was denied by the lower court and its action

affirmed on appeal. The question for decision, as stated by the court, was: "Whether or not a municipality in this state, owning and operating an electric light plant for the production of electricity for its own use and also for the sale thereof to private consumers, is subject to the provisions of the act and to the supervision of the Public Utilities Commission." And that question rose out of the appellant's contention that the exemption of a municipal corporation from the general law regulating public utilities was a special law, and in conflict with a provision of the constitution of Illinois prohibiting the enactment of such a law. In dealing with the question the court in part said: "But we do not agree with the appellant's contention that exempting municipalities and public utilities owned and operated by municipalities from the provisions of the statute violates the constitution. The word 'corporation,' as used in paragraph 22 of article 4 of our constitution, does include municipal corporations. *People, ex rel. Danville, v. Fox,* 247 Ill. 402. But municipal corporations may form a separate and distinct class from private corporations. The constitutional provision does not mean that the same rule shall apply to every individual in the state under all circumstances, but only under substantially the same circumstances; and laws may be valid, though operating only upon particular persons or classes, if there is a valid reason for such particular operation. * * * The basis of the two statutes in question for making two distinct classes of public utilities—those owned and operated by private corporations and those owned and operated by municipalities—is the supposition that there exists some valid reason why both of them cannot or should not be subject to all the provisions of the Public Utilities act, and be regulated and rates fixed for them in accordance with the provisions of that act. If such a valid reason does exist, the legislature did not violate any constitutional provision in enacting the two separate acts, for the regulation and control of the two classes of public utilities. * * * It is clear, therefore, that the legislature acted within its constitutional rights

and powers in enacting the two statutes and making different provisions in so far as the same were necessary to accomplish the purposes for which the two acts were enacted. It is equally clear that the legislature had the right and power to delegate to the municipalities the right of regulation and control of such municipally owned plants. Such right is clearly recognized not only in this state, but in other states. It might have given the Public Utilities Commission the right to fix the rates and charges of plants owned by municipalities, in accordance with the provisions of the Municipal Ownership act, as well as the right to regulate and fix charges for privately owned public utilities under the Public Utilities act, had it seen fit to do so. The fact that it has designated municipalities as the proper bodies that shall regulate and fix the rates to be charged by utilities owned by them can furnish no cause for complaint to appellant, as the rates that appellant may charge under the Public Utilities act are necessarily fixed upon a different basis, and may or may not be the same as the rates and charges that may be fixed under the Municipal Ownership act, even in the same city. * * * A law is not local or special, in a constitutional sense, if it operates in the same manner upon all persons in like circumstances. 'A law general in its character may extend only to particular classes and not be obnoxious to the provisions of the constitution if all persons of the same class are treated alike under similar circumstances and conditions. * * * A law is general, not because it embraces all the governed, but that it may from its terms, when many are embraced in its provisions, embrace all others when they occupy like positions to those who are embraced. Such a law must be based upon some substantial difference between the situation of a class or classes and another class or classes to which it does not apply.' * * * Whether or not public utilities owned by municipalities shall be placed upon a different basis from public utilities owned by private corporations, associations or persons, for regulation and for fixing their rates and charges, is a question solely for the

legislature to determine, as is also the question whether or
not they shall be regulated and rates fixed for them by differ-
ent tribunals or by the same tribunal.   There was a good and
substantial reason for the legislature dividing public utilities
into the two classes aforesaid, and making laws specially
applicable to each of them, as aforesaid. * * * We may con-
cede that the operation by a municipality of an electric light
plant for the furnishing of light or power to private con-
sumers, for gain, can not in any sense be the performance
of a governmental function.   Such established principle can
furnish no reasonable basis for appellant's argument in this
case, that such municipalities must be put in the same class
with private corporations or persons operating public utili-
ties, for the purpose of regulation and of fixing their rates
and charges in operating such public utilities.   It might just
as well be argued that corporations operating steam railroads
should be put in the same class, for all purposes of legisla-
tion, with corporations operating street railroads, because
they both carry for hire passengers and freight of all kinds."

And in the same case, on appeal, Mr. Justice Holmes,
speaking for the Supreme Court of the United States, said:
"The plaintiff's argument shortly stated is that in selling
electricity the city stands like any other party engaged in a
commercial enterprise, and that to leave it free in the mat-
ter of charges while the plaintiff is subject to the public
utilities board is to deny to the plaintiff the equal protection
of the law.   But we agree with the Supreme Court of the
State that the difference between the two types of corpora-
tion warrants the different treatment that they have received.
The private corporation, whatever its public duties, is organ-
ized for private ends, and may be presumed to intend to
make whatever profit the business will allow.   The municipal
corporation is allowed to go into the business only on the
theory that thereby the public welfare will be subserved.
So far as gain is an object, it is a gain to a public body, and
must be used for public ends.   Those who manage the work
cannot lawfully make private profit their aim, as the plain-

tiff's directors not only may, but must." 257 U. S. 69. See also note 18 *A. L. R.* 946.

But as I read it, the opinion of the Court in this case does not necessarily deny the power of the Legislature to exempt municipal corporations as a class from the Public Service Law, but it holds that any act which so classifies them so long as the Public Service Law is unrepealed is a special law. But that seems to be a contradiction in terms. If the classification is proper it is not a special law, within the meaning of the constitution; if the act is a special law, the classification must be improper. That is, it would seem wholly unreasonable to hold, that the Legislature could repeal the whole Public Service Law, and then enact it as a new law exactly as it is, and it would be valid, but that because its present form is due to amendment rather than original enactment it is invalid. That seems to me to be sacrificing actual substance to false and illusory form.

And since a single municipal corporation may properly be placed by its own name in a class by itself, as was done in the Act of 1910 as well as in this act (12 *C. J.* 1134), provided there is a reasonable basis for the classification, in my opinion the Act of 1924 was not invalid because it made such a classification. Nor do I think any sound objection can be made to it because of the second and third classifications made by the act. *Ibid.*

For these reasons I do not think the appellee was required to obtain the approval of the Public Service Commission before it issued its bonds or built its plant, and no other substantial ground having been urged to the decree of the lower court, it should be affirmed.