# THOMAS S. JACKSON

*vs.*

# STATE OF MARYLAND.

*Race segregation: void ordinance; right of citizens to acquire and occupy property.*

Race segregation ordinances, to prohibit people of the colored race from living in blocks where all or a majority of the other residents are white, are in contradiction of the Fourteenth Amendment to the Federal Constitution and are void.

pp. 313-314

The right of the individual citizen to acquire or use property can not be validly restricted by State or municipality on the ground of color. p. 316

*Decided February 27th, 1918.*

Appeal from the Criminal Court of Baltimore City. (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*W. Ashbie Hawkins* and *C. C. Fitzgerald,* for the appellant.

*S. S. Field,* the City Solicitor for Baltimore City, and *Albert C. Ritchie,* the Attorney General, for the appellee.

URNER, J., delivered the opinion of the Court.

It is not necessary to decide whether the *ordinance before us, providing for the segregation ·of races in the City of Baltimore, obviates the specific objections on account of which a prior ordinance, having the same object in view, was held ,invalid by this Court in the case of *State* v. *Gurry,* 121 Md. 534. Since the decision of that case the Supreme Court of the United States, in *Buchanan* v. *Warley,* 245 U. S. 60, has declared regulations of this character to be in contravention of the Fourteenth Amendment to the Federal Constitution. This conclusion was announced with particular reference to an ordinance of the City of Louisville, but the principle of the decision applies with equal force to the ordinance here under consideration. The two enactments are essentially alike in theory and purpose. Both were designed to promote the segregation of the white and colored races by restrictions and prohibitions imposed upon the exercise, under certain conditions, of the ordinary rights of citizens in the purchase and occupancy of property. The Louisville ordinance provided, in effect, that no member of either race should occupy as a residence any ·house in a city block in which the *majority* ˙ of the houses were inhabited by members of the other race, while the Baltimore ordinance forbids the occupancy by a member of one of the races of a house in a block in which members of the other race were the *only* residents. In each instance an exception was made in favor of property rights already vested.

In the case involving the Louisville ordinance, the Supreme Court, in its opinion as delivered by MR. JUSTICE DAY, said: "The concrete question here is: May the occupancy, and, necessarily, the purchase and sale of property of which occupancy is an incident, be inhibited by the States, or by one of its municipalities, solely because of the color of the proposed occupant of the premises? That one may

*Segregation Ordinance No. 339, approved Sept. 25, 1913.

dispose of his property, subject only to the control of lawful enactments curtailing that right in the public interest, must be conceded. The question now presented makes it pertinent to inquire into the constitutional right of the white man to sell his property to a colored man, having in view the legal status of the purchaser and occupant."

After referring to cases in which the effect of the Thirteenth and Fourteenth Amendments was discussed, the opinion proceeded:

"In giving legislative aid to these constitutional provisions, Congress enacted in 1866, Ch. 31, Sec. 1, 14 Stat. 27 (Rev. Stats. Sec. 1978), that: 'All citizens of the United States shall have the same right in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property.'

"And in 1870, by Ch. 114, Sec. 16, 16 Stat. 144 (Rev. Stats. Sec. 1977), that: 'All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and no other.'

"In the face of these constitutional and statutory provisions, can a white man be denied, consistently with due process of law, the right to dispose of his property to a purchaser by prohibiting the occupation of it for the sole reason that the purchaser is a person of color intending to occupy the premises as a place of residence?

"The statute of 1866, originally passed under sanction of the Thirteenth Amendment, 14 Stat. 27, and practically re-enacted after the adoption of the Fourteenth Amendment, 16 Stat. 144, expressly provided that all citizens of the United States in any State shall have the same right to pur-

chase property as is enjoyed by white citizens. Colored persons are citizens of the United States and have the right to purchase property and enjoy and use the same without laws discriminating against them solely on account of color. *Hall v. DeCuir,* 95 U. S. 485, 508. These enactments did not deal with the social rights of men, but with those fundamental rights in property which it was intended to secure upon the same terms to citizens of every race and color. *Civil Rights Cases,* 109 U. S. 3, 22. The Fourteenth Amendment and these statutes enacted in furtherance of its purpose operate to qualify and entitle a colored man to acquire property without State legislation discriminating against him solely because of color."

Reference is made in the opinion to cases in which laws were sustained which "separated the races on the basis of equal accommodations in public conveniences," and which provided for "separation in the public schools of white and colored pupils where equal privileges are given." The Court said: "But in view of the rights secured by the Fourteenth Amendment to the Federal Constitution such legislation must have its limitations, and cannot be sustained where the exercise of authority exceeds the restraints of the Constitution. We think these limitations are exceeded in laws and ordinances of the character now before us." The opinion then continued:

"It is the purpose of such enactments, and it is frankly avowed it will be their ultimate effect, to require by law, at least in residential districts, the compulsory separation of the races on account of color. Such action is said to be essential to the maintenance of the purity of the races, although it is to be noted in the ordinance under consideration that the employment of colored servants in white families is permitted, and nearby residences of colored persons not coming within the blocks, as defined in the ordinance, are not prohibited.

"The case presented does not deal with an attempt to prohibit the amalgamation of the races. The right which the ordinance annulled was the civil right of a white man to dispose of his property if he saw fit to do so to a person of color and of a colored person to make such disposition to a white person.

"It is urged that this proposed segregation will promote the public peace by preventing race conflicts. Desirable as this is, and important as is the preservation of the public peace, this aim can not be accomplished by laws or ordinances which deny rights created or protected by the Federal Constitution.

"It is said that such acquisitions by colored persons depreciate property owned in the neighborhood by white persons. But property may be acquired by undesirable white neighbors or put to disagreeable though lawful uses with like results.

"We think this attempt to prevent the alienation of the property in question to a person of color was not a legitimate exercise of the police power of the State, and is in direct violation of the fundamental law enacted in the Fourteenth Amendment of the Constitution preventing State interference with property rights except by due process of law."

In the case of *Carey* v. *City of Atlanta,* 143 Georgia, 192, an ordinance similar in principle to the Louisville and Baltimore ordinances was held to be unconstitutional and void. That decision was cited by the Supreme Court in the Louisville case, with a quotation from it which concludes as follows: "The effect of the ordinance under consideration was not merely to regulate a business or the like, but was to destroy the right of the individual to acquire, enjoy and dispose of his property. Being of this character, it was void as being opposed to the due-process clause of the Constitution."

It is thus definitely settled, upon the highest authority, that the right of the individual citizen to acquire or use property can not be validly restricted, by State or municipality, on the ground of his color. In declaring this rule of constitutional law, the Supreme Court has not confined its operation to such conditions only as the Louisville case presented. The principle is broad enough to invalidate any ordinance or statute which seeks to make the ownership or occupancy of property, in particular localities, depend upon the color of the persons by whom the right may be asserted. This is just as distinctly the object of the Baltimore ordinance as of the one directly involved in the decision of the Supreme Court. The fact that the former deals with city blocks which are occupied wholly by white or colored residents, while the latter relates to blocks in which the white or colored inhabitants are merely in the majority, does not create any essential difference in principle or purpose between the two ordinances. In each instance there is an attempted limitation of the property rights of individuals on account of their color, and this ground of constitutional objection is equally present whether the residential sections to be regulated are occupied wholly or only in part by the members of the respective races. The Baltimore segregation ordinance is clearly opposed to the principle declared and enforced by the Supreme Court in holding the Louisville ordinance to be invalid, and we can, therefore, have no hesitation in deciding that the present ordinance is likewise unconstitutional. The same conclusion, in reference to this ordinance, has been reached by JUDGE ROSE, in the United States District Court for the District of Maryland in the case of *United States, use of Coleman,* v. *Henry,* recently decided.

*Judgment reversed.*