**LIBERTY ANNEX CORPORATION v. CITY OF DALLAS et al. (No. 9902.) \***

(Court of Civil Appeals of Texas. Dallas. Dec. 4, 1926. Rehearing Denied Jan. 8, 1927.)

1. **Injunction** ⊂⇒114(3)—**In suit to restrain enforcement of ordinance segregating residences of negroes, those allegedly conspiring to enforce it held proper, but not necessary, parties.**

In landowner's suit against city to restrain enforcement of ordinance providing segregation of residences of white and colored persons, third parties alleged to have conspired with city to enforce ordinance, so that plaintiff could not sell his land, *held* proper, but not necessary, parties.

2. **Appeal and error** ⊂⇒1036(2)—**Erroneous ruling that third persons were not proper parties defendant in suit against city to restrain enforcement of ordinance held not prejudicial, where not affecting relief sought.**

In suit against city to restrain enforcement of ordinance providing for segregation of residences of white and colored persons, court's ruling that persons allegedly conspiring to enforce ordinance so plaintiff could not sell land were not proper parties defendant, though error, *held* harmless, since full relief could be obtained by injunction against city.

3. **Injunction** ⊂⇒114(2)—**Landowner, suing to restrain enforcement of ordinance segregating negro residences, to protect interest in unsold lots, need not join negro owners of lots sold as parties plaintiff.**

In suit by owner of tract of land, who had sold lots therein to negroes, to restrain enforcement of ordinance providing for segregation of residences of white and colored persons, plaintiff need not join negroes owners of lots as parties plaintiff, where suit was brought for exclusive purpose of preventing loss of property interest in unsold lots.

4. **Constitutional law** ⊂⇒258—**Ordinance punishing criminally breach of agreement segregating residences of white and colored persons held violative of due process (Const. art. 1, § 19; Const. U. S. Amend. 14).**

Ordinance punishing criminally for breach of agreement providing for segregation of residences of white and colored persons *held* to violate due process clause of state Constitution (article 1, § 19) and Const. U. S. Amend. 14, since right to occupy property may not be prohibited by law solely because of color of occupant.

5. **Covenants** ⊂⇒1—**Members of white and colored races may mutually bind themselves to observe covenants segregating races in regard to occupancy of their lands.**

Members of white and colored races are within their rights in mutually binding themselves, their heirs and assigns, to observe covenants segregating races in regard to sale, lease, or occupancy of their lands.

6. **Courts** ⊂⇒97(5)—**Decision of federal Supreme Court on federal Constitution is binding on Court of Civil Appeals.**

Previous decision of United States Supreme Court as to violation of federal Constitution is binding on Court of Civil Appeals, when identical question is before it.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Suit by the Liberty Annex Corporation against the City of Dallas and others. From a judgment dismissing the suit, plaintiff appeals. Reversed and remanded.

Burgess, Ousley, Storey & Stewart, of Dallas, for appellant.

J. J. Collins, Hugh S. Grady, and Pierson & Pierson, all of Dallas, for appellees.

LOONEY, J. The question presented in this case is whether an ordinance of the city of Dallas providing for the segregation of residences of white and colored persons is in violation of the "due process of law" clause of both the federal and state Constitutions.

Appellant sued the city of Dallas, its mayor and members of the board of commissioners, and C. M. Roark, R. C. Lee, Carl Carlson, Ira Kimbrough, and Lagow Improvement Association, a corporation, alleging that it owned a tract of land in the city of Dallas adaptable only for subdivision and sale to negroes; that the land had been subdivided and improved by erecting houses on each of the lots, 52 in number; that it was selling these lots to negroes at advantageous prices, had succeeded in selling 20 or more, and that the city of Dallas adopted an unconstitutional penal ordinance forbidding the occupancy by negroes of certain property embracing the property owned by appellant. The preamble or caption of this ordinance and its material provisions are as follows:

"Whereas, representatives of the white race and representatives of the colored race owning

property in the hereinafter territory and adjacent thereto have entered into an agreement concerning the residence of each race and the respective territory that shall be observed in the residence of each race, and have petitioned the board of commissioners of the city of Dallas to approve the said agreement by an ordinance; and,

"Whereas, it is deemed advisable by the board of commissioners, in order to promote neighborhood tranquility and peace among the said races, that said agreement be confirmed and that the territory hereinafter described, and as further shown by the map on file in the city secretary's office, be declared to be territory to be used as the residence of white persons and as a residence for colored persons as hereinafter shown:

"Now, therefore, be it ordained by the board of commissioners of the city of Dallas:

"Section 1. That the agreement, and understanding as between the white and colored races concerning the territory hereinafter described is hereby confirmed, and it shall hereafter be unlawful for any of the colored race to use and occupy as a residence the hereinafter described territory, save and except such colored persons as are shown on the map to reside on Spring avenue, and save and except such colored persons as are shown on the map to reside near the T. & N. O. Railway and Tuskegee street. That the said territory so described is as follows, to wit: [Here follows description.]

"Section 2. That, it shall be unlawful for any of the white race to occupy any of the territory shown on said map as lying near and adjacent to the intersection of the T. & N. O. Railway and Tuskegee street, which lies adjacent to the land hereinabove described as shown on said map."

In section 3, it is provided that any one violating the ordinance shall be subject to a fine of not less than $5 or more than $200 and that each day shall constitute a distinct offense. In section 4, the term "colored person" is defined to mean all persons of African descent, and the term "white persons" is defined as meaning all persons not of the colored race as just defined.

Appellant alleged that neither it nor any of its predecessors in title was a party to said agreement, and further that the city of Dallas and the mayor and board of commissioners were proceeding to enforce the ordinance, threatening with arrest negroes who had purchased lots from appellant; that the other defendants, to wit, Carlson, Roark, Lee, Kimbrough, and Lagow Improvement Association, were confederating and conspiring with the city and its officials, urging the enforcement of the ordinance; that negroes would not purchase lots from appellant, unless permitted to occupy the same. Wherefore it would be unable to dispose of the balance of its lots, resulting in irreparable injury and damage.

Appellant sought an injunction against the defendants, prohibiting the enforcement or the attempted enforcement of the ordinance. The court sustained a plea of misjoinder, holding that the city of Dallas and its com-

missioners could not be properly joined with the other defendants, and also sustained a general demurrer to appellant's petition, whereupon appellant amended, and urged the same complaint against the city and its board of commissioners.

Defendants pleaded the nonjoinder as coplaintiffs of the negroes to whom appellant had made prior sales, and also urged a general demurrer to the appellant's petition. The court sustained the general and special exceptions, and, as appellant declined to further amend, judgment was entered dismissing the suit, from which this appeal is prosecuted.

[1, 2] 1. Appellant urges that the defendants the Lagow Improvement Association, R. C. Lee, C. M. Roark, Carl Carlson, and Ira Kimbrough, who were charged by appellant with having conspired with the city and its commissioners to enforce the alleged invalid ordinance, were proper parties, and that the court erred in sustaining the plea of misjoinder. In our opinion, the action of the court was erroneous. These defendants were proper, but not necessary, parties. The error, however, is void of injury to appellant in that it can and will obtain full relief by an injunction against the city and its officials, restraining the enforcement of the ordinance in question. In view of the disposition which will be made of the case, we hold that the error is immaterial and harmless.

[3] 2. Appellant makes the further contention that the court erred in sustaining the plea of nonjoinder, for the reason that the negroes who had purchased lots from appellant prior to the institution of the suit were not joined as coplaintiffs. We agree with appellant's contention. The suit was not in any sense in the interest of the negroes who had purchased lots, but was for the sole and exclusive purpose of preventing loss to appellant of property interest in the unsold lots. The allegations with reference to the prior sale of 20 or more lots to negro purchasers, and the threat of the city and its officials to enforce the ordinance against these purchasers, were matters of inducement in aid of the charge that other negroes were being deterred from purchasing lots for fear of prosecution. There is nothing in the case that suggests the necessity for the presence in the suit of these prior purchasers. It is true that each of these prior purchasers would have a like cause of action, but it would be separate, distinct, and personal. It was not necessary, in our opinion, for appellant to have joined them in the action, and the court erred in sustaining the plea of nonjoinder.

[4] 3. This brings us to the principal issue involved in this cause; that is, whether the ordinance in question violates the "due process of law" provision of both the federal and state Constitutions. It is apparent, from the language of the ordinance, that it is

built upon, and was designed for the enforcement of, an agreement entered into between certain representatives of the white and colored races, 21 in number, although the record is silent as to the number of each race signing the document. A breach of the agreement is punishable by a fine of from $5 to $200, and each day the prohibited territory is occupied in violation of the ordinance a separate offense is committed.

Was it within the power of the city of Dallas to penalize a breach of the segregation agreement? We think not. Great latitude is allowed legislative bodies in exercising the police power to safeguard the health, safety, and comfort of the public; fraud and deceit, in relation to contracts, may be punished criminally, and various businesses, impressed with a public use, may be regulated; but we have been cited to no authority sustaining a statute or ordinance punishing criminally the breach of a contract such as the one under review. If the breach of the segregation agreement under consideration may be punished criminally, no reason exists why the entire field of civil contracts may not be occupied by this class of legislation, and a penalty imposed for the breach of contracts of every nature.

[5] The agreement added nothing to the validity of the ordinance; hence we will disregard it, and consider the ordinance on its merits as a segregation law. It may be correctly said that the members of the white and colored races were at liberty, and were within their rights, if they so desired, to mutually bind themselves and their heirs and assigns, to observe covenants segregating the races in regard to the sale, lease, or occupancy of lands belonging to them. Agreements of this nature do no violence to any provision of either the state or federal Constitution, or of any public policy, and are therefore uniformly upheld by the courts. Corrigan v. Buckley, 55 App. D. C. 30, 299 F. 899, and the authorities there cited.

The issue here, however, does not involve the right of landowners to execute covenants running with the land, by which they bind themselves and their heirs and assigns to prevent the land described in the covenant from being sold, leased to, or occupied by negroes or by whites. Neither is the question the same as has often arisen under laws requiring the separation of members of the white and black races in the use of public conveyances, public schools, public playgrounds, etc. All such regulations have been sustained by the courts, on the ground that equal, though separate, accommodations and privileges were afforded members of the white and colored races. Plessy v. Ferguson, 163 U. S. 537, 16 S. Ct. 1138, 41 L. Ed. 256; Corrigan v. Buckley, supra.

The concrete question before us is: May the right to occupy—and necessarily incident thereto the right to purchase and sell property—be prohibited by a law, state or municipal, solely because of the color of the proposed occupant of the property? This identical question was before the Supreme Court of the United States in Buchanan v. Warley, 245 U. S. 60, 38 S. Ct. 16, 62 L. Ed. 149, L. R. A. 1918C, 210, Ann. Cas. 1918A, 1201. The case involved the validity of a penal ordinance enacted by the city of Louisville, which made it unlawful for any white person, or colored person, as the case might be, to occupy as a place of residence, place of abode, or to establish and maintain as a place of public assembly, any house in any block upon which a greater number of the houses were occupied for the purposes above mentioned by members of the other race. The ordinance was attacked on the ground that it was in conflict with the Fourteenth Amendment to the Constitution of the United States, in that it abridged the privileges and immunities of citizens of the United States to acquire and enjoy property, and that it constituted a taking of property without due process of law.

The Supreme Court nullified the ordinance on the ground that it was in conflict with the constitutional provision above mentioned. The decision of the court and the reasons stated are fairly shown by the following passages which we reproduce from the opinion. The court said:

"* * * This drastic measure is sought to be justified under the authority of the state in the exercise of the police power. It is said such legislation tends to promote the public peace by preventing racial conflicts; that it tends to maintain racial purity; that it prevents the deterioration of property owned and occupied by white people, which deterioration, it is contended, is sure to follow the occupancy of adjacent premises by persons of color."

The court then discusses at some length the Fourteenth Amendment to the federal Constitution and the acts of the Congress passed in pursuance thereof, and proceeds:

"In the face of these constitutional and statutory provisions, can a white man be denied, consistently with due process of law, the right to dispose of his property to a purchaser by prohibiting the occupation of it for the sole reason that the purchaser is a person of color, intending to occupy the premises as a place of residence? * * * That there exists a serious and difficult problem arising from a feeling of race hostility which the law is powerless to control, and to which it must give a measure of consideration, may be freely admitted. But its solution cannot be promoted by depriving citizens of their constitutional rights and privileges."

After a very elaborate discussion of the subject, the court concluded as follows:

"We think this attempt to prevent the alienation of the property in question to a person of color was not a legitimate exercise of the police power of the state, and is in direct violation of

the fundamental law enacted in the Fourteenth Amendment of the Constitution preventing state interference with property rights except by due process of law.'; That being the case, the ordinance cannot stand."

[6] We can add nothing to the conclusiveness of this language. The rule announced is binding on this court, and its application to the case at bar necessitates its reversal. We hold that the trial court erred in sustaining the general and special exceptions to appellant's petition, and in dismissing the cause. The case will therefore be reversed and remanded for further proceedings not inconsistent with our holdings.

Reversed and remanded.