**CITY OF DALLAS et al. v. LIBERTY ANNEX CORPORATION. (No. 10410.)**

Court of Civil Appeals of Texas. Dallas. May 27, 1929.

Rehearing Denied June 29, 1929.

Jas. J. Collins, City Atty., and H. P. Kucera, A. A. Long, and W. H. Knight, Asst. City Attys., all of Dallas, for appellant.

Geo. T. Burgess, of Dallas, for appellee.

LOONEY, J. The record of this case on former appeal is reported in 289 S. W. 1067, to which we refer for a statement of its nature. The disposition we then made of the case was approved by the Supreme Court, on recommendation of Section A of the Commission of Appeals. See 295 S. W. 591. On being remanded, the trial was to the judge, who, after hearing the evidence, resolved the facts in favor of appellee, and held the ordinances of the city of Dallas involved in the controversy, to wit, Ordinance No. 195, approved, August 8, 1916, entitled "An ordinance for preserving peace, preventing conflict and ill-feeling between the white and colored races, by providing for the use of separate blocks for white and colored people for residences and for other purposes, prescribing a penalty and decreeing an emergency," and Ordinance No. 1106, approved January 22, 1924, entitled "An ordinance providing for the segregation of the white and colored races in accordance with an agreement entered into by the representatives of such races concerning the hereinafter described territory and decreeing an emergency," unconstitutional and void, enjoined the city, its governing authorities, and their successors from in any manner interfering with appellee in its right to own, possess, use, and sell to negroes, or to permit and allow negroes to use and occupy, any part of its said property, known as Liberty Annex addition, and from enforcing or attempting to enforce against appellee, or any purchaser, lessee, tenant, or occupant of land under it, either or both of the ordinances above mentioned. From this judgment, the city and her governing authorities have appealed.

Appellants contend that the trial court erred in refusing to abate the suit, for failure to join necessary parties. On the former appeal we decided the question of nonjoinder, as to the 20 or more negro purchasers and prospective purchasers of lots from appellee, adversely to the contention of appellants. We adhere to the ruling then made. As to the nonjoinder of parties to the segregation agreement, it is only necessary to say that the suit was in no sense an attack on the validity of this agreement; the rights of parties thereto were not involved or imperiled, and could not have been affected by any judgment authorized by the pleading. We therefore overruled this contention.

Appellants also insist that the court erred in sustaining certain special exceptions, urged by appellee to their allegations, to the effect that appellee and its predecessors in title had notice of the segregation agreement, acquiesced therein, and were bound by its terms, and, further, that the court also erred in rejecting evidence offered by appellants, tending to sustain these allegations.

These assignments are, in our opinion, without merit, but no time will be consumed in their discussion, because the questions raised are necessarily comprehended in the larger question, as to the validity of the ordinances, for if the city was without authority to enact the ordinances, or to penalize the violation of the alleged segregation agreement, the inquiry, whether or not appellee was bound by the terms of the agreement, is immaterial. The contention of appellant in this regard is that the city of Dallas was authorized under its police power, in the interest of public peace and the general welfare, to enact the segregation ordinances and that the trial court erred in holding them unconstitutional and in enjoining their enforcement.

In aid of this contention appellant invokes the provisions of chapter 103, General Laws,

enacted at the regular session of the Fortieth Legislature in March, 1927, under which cities are authorized to provide by suitable ordinances for the segregation of negroes and whites; to withhold permits for the construction of houses to be occupied by negroes in white communities; to withhold permits for the establishment of residences to be occupied by whites on property located in negro communities; with authority to define white and negro races, and white and negro communities, and to enforce, by appropriate penalties, the observance of such ordinances. Section 2 of said act provides: "That it shall be lawful for negroes and whites to enter into mutual covenants or agreements concerning their respective residence [a right they already possessed], and the power and authority is conferred upon the governing body of any city to pass suitable ordinances requiring the observance of any such agreement." Section 4 of said act reads: "That the governing authorities of any such city shall have full power to enforce the observance of any ordinance passed leading to or providing for the segregation of the races and to require the observance thereof by appropriate penalties."

The powers conferred upon cities by this act were adopted by the city of Dallas, as a part of its charter, at an election held for that purpose on December 15, 1927, and the two segregation ordinances, hereinbefore mentioned, were at said election specifically ratified and confirmed, as though passed under and by authority of said act. The question, therefore, is as to the constitutional validity of these segregation ordinances. On the first appeal of this case, we held, on authority of Buchanan v. Warley, decided by the Supreme Court of the United States, reported in 245 U. S. 60, 38 S. Ct. 16, 62 L. Ed. 149, L. R. A. 1918C, 210. Ann. Cas. 1918A, 1201, that the ordinances segregating whites and blacks, based on the color line, were in conflict with the "due process of law" provision of both the state and federal Constitutions; therefore void and unenforceable. We adhere to that holding.

Appellants contend, however, that the parties to the segregation agreement, members of the white and colored races, having agreed and mutually bound themselves to observe covenants segregating the races in regard to the sale, lease, and occupancy of lands belonging to them, as they were legally authorized to do, the city, in the interest of public peace and the general welfare, was authorized to enact the ordinance confirming the agreement, and requiring its observance by the imposition of appropriate penalties.

Section 1 of article 14 of the federal Constitution reads: " * * * Nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Section 19, article 1, of our state Constitution reads: "No citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchise, except by the due course of tne law of the land."

In disposing of this question, which made its appearance on the first appeal, we used this language (289 S. W. 1067, 1069): "Was it within the power of the city of Dallas to penalize a breach of the segregation agreement? We think not. Great latitude is allowed legislative bodies in exercising the police power to safeguard the health, safety, and comfort of the public; fraud and deceit, in relation to contracts, may be punished criminally, and various businesses, impressed with a public use, may be regulated; but we have been cited to no authority sustaining a statute or ordinance punishing criminally the breach of a contract such as the one under review. If the breach of the segregation agreement under consideration may be punished criminally, no reason exists why the entire field of civil contracts may not be occupied by this class of legislation, and a penalty imposed for the breach of contracts of every nature."

We reaffirm and will re-enforce what we then said. The right to terminate a contract, subject only to civil liability for its breach, is a privilege of the citizen; in fact, is recognized as property, of which he cannot be deprived without "due process of law." The ordinance under review denounces the breach of the segregation agreement as a crime, punishable by a fine of not less than $5 nor more than $200. If a party legally bound by this agreement is compelled against his will to obey the ordinance, necessarily he will be deprived of a right, guaranteed by organic law; that is, the right to terminate the contract, subject, of course, to civil liability to any one damaged by the breach. On the other hand, if he disobeys the ordinance, he is punishable criminally for an act, the doing of which is protected by organic law as property, therefore legally innocent. In any prosecution accused would stand prejudged, as to the quality or criminality of his act; that question could not be raised, having been forestalled by the provisions of the ordinances that denounce and penalize the act as a crime.

Similar legislation has been uniformly held void, under the "due process of law" provision of our organic law. The following cases are in point: Gillespie v. People, 188 Ill. 176, 58 N. E. 1007, 52 L. R. A. 283, 80 Am. St. Rep. 176; Coffeyville Vitrified Brick Co. v. Perry, 69 Kan. 297, 76 P. 848, 66 L. R. A. 185, 1 Ann. Cas. 936; State v. Julow, 129 Mo. 163, 31 S. W. 781, 29 L. R. A. 257, 50 Am. St. Rep. 443; Toney v. State, 141 Ala. 120, 37 So. 332, 67 L. R. A. 286, 109 Am. St. Rep. 23, 3 Ann. Cas. 319.

We are therefore of opinion that it was beyond the province of the city of Dallas, by

simply conjuring in the name of the police power, to brand as a crime an act, recognized as a right, privilege, and property itself. The act of the Legislature, brought to our attention, added nothing and gave no vitality to the segregation ordinances, for the simple reason that the Legislature was as impotent as the city to enact a valid law on the subject.

We therefore hold the segregation ordinances in conflict with the "due process of law" provision of both our state and federal Constitutions; hence void and unenforceable.

All assignments and propositions are overruled, and the judgment of the trial court is affirmed.

Affirmed.