**CITY OF BIRMINGHAM et al.**
**v. MONK et al.**

No. 13158.

United States Court of Appeals
Fifth Circuit.

Dec. 19, 1950.

Rehearing Denied Jan. 25, 1951.

---

2. Dallas Railroad and Terminal Co. v. Sullivan, 5 Cir., 108 F.2d 581.

860

Horace C. Wilkinson, Special Counsel for City of Birmingham, Thomas E. Huey, Jr., Asst. City Atty., Birmingham, Ala., for appellants.

Thurgood Marshall, New York City, Arthur D. Shores, Peter A. Hall, and David H. Hood, Jr., all of Birmingham, Ala., for appellees.

Before McCORD, BORAH, and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal from a final judgment in an action brought by Mary Means Monk and several other Negro citizens of the United States, residents of the City of Birmingham, Alabama, in their own behalf and in behalf of other Negroes similarly situated, against the City of Birmingham, James W. Morgan, a city commissioner, and H. E. Hagood, city building inspector, praying for a declaratory judgment that certain zoning laws of the City are unconstitutional and void as violative of the Fourteenth Amendment to the Constitution of the United States, and for an injunction against defendants forever restraining and enjoining them from enforcing said ordinances.

The complaint alleges that plaintiffs own certain real property located in the City of Birmingham which is subject to the provisions of Sections 1604 and 1605 of the General City Code of Birmingham, 1944, and supplementary ordinance No. 709-F. Sections 1604 and 1605 are a part of the basic zoning law of the City. With some minor exceptions, not here important, they make it unlawful for a Negro to occupy property for residential purposes in an area zoned A-1 or white residential, or for a white person to occupy property for residential purposes in an area zoned B-1 or Negro residential. Ordinance No. 709-F, Section 3, provides: "That it shall be a misdemeanor for a member of the colored race to move into, for the purpose of establishing a permanent residence, or having moved into, to continue to reside in an area in the City of Birmingham generally and historically recognized at the time as an area for occupancy by members of the white race." These provisions of the ordinances are assailed on the ground that they deny to plaintiffs and others similarly situated the right to occupy, enjoy and dispose of their property solely because of their race and color in violation of the rights guaranteed to plaintiffs by the Fourteenth Amendment and Sections 41 and 42 of Title 8, United States Code Annotated. And the relief prayed for is that the court enjoin the enforcement of the challenged Sections 1604 and 1605 of the City Code and Ordinance No. 709-F and render judgment declaring said ordinances unconstitutional, null and void. The answer of defendants denies that plaintiffs are prevented from occupying their property

solely because of their race or color and sets up that the classification of certain areas in the City of Birmingham in its zoning ordinances as white resident sections and Negro resident sections "is based and justified in part upon the difference between the white and Negro races and not solely upon race and color," and denies that the ordinances are unconstitutional and invalid. The defendants further aver that the zoning ordinances are a valid and legal exercise of the police power of the City of Birmingham which by specific statutory enactment is commensurate with the police power of the State of Alabama and is a power that is inalienable and cannot be surrendered by the City of Birmingham, Alabama, or by the State of Alabama.

The case was tried before the Court without a jury and thereafter the judge made findings of fact and conclusions of law unfavorable to defendants, and on December 16, 1949, entered a decree declaring the ordinances unconstitutional and void, and enjoining their enforcement.

The trial court found that plaintiffs are the owners of the real estate described in their complaint and that each of them purchased their property for the purpose of occupying it as a residence; that these properties are affected by and subject to the provisions of the ordinances in question and are located in sections of the City which are, by virtue of the zoning ordinances, reserved exclusively for occupation by white persons; that neither the plaintiffs nor other members of the Negro race will be permitted to occupy said property for dwelling purposes solely because they are Negroes; that none of the plaintiffs will be permitted by the City to construct residences on their property to be occupied by them or any member of the Negro race because the City will not issue building permits solely because the ordinances in question limit the occupancy of such properties to members of the white race; that it is the established and universal custom of the City officials to deny building permits to construct residences for Negro occupancy in districts zoned for white occupancy; and that if dwellings were erected on the properties, the plaintiffs or other Negroes could not occupy them without becoming subject, under the provisions of the ordinances, to criminal prosecution, fine and imprisonment, solely on account of the fact that they are members of the Negro race. These findings are fully supported by the evidence and are not challenged on this appeal.

Appellants are here insisting that the judgment should be reversed and that the trial court erred in excluding certain evidence. These are the only errors assigned.

The important question presented by this appeal is whether or not the zoning laws and supplemental ordinance in question constitute a legitimate exercise of the police power of the State, as claimed by appellants, or are unconstitutional and void as violative of the Fourteenth Amendment to the Constitution of the United States, as contended by appellees.

■ The property rights of plaintiffs are here directly involved. The rights created by the first section of the Fourteenth Amendment are, by its terms, guaranteed to the individual. The rights established are personal rights.[1] One of the basic objectives sought to be effectuated by the framers of the Fourteenth Amendment was freedom from discrimination by the States and their municipalities in the enjoyment of property rights. The Fourteenth Amendment prevents State interference with property rights save by due process of law and "property is more than the mere thing which a person owns," it includes the right to use, acquire and dispose of it and more specifically the right to residential occupancy for lawful purposes without discriminatory restriction. It is true, as urged by appellants, that the State and its municipalities in the exercise of those police powers that were reserved at the time of the adoption of the Constitution has wide discretion in determining its own public policy and what means are necessary for its own protection and properly to promote the safety, peace, public health, convenience and good order

1. Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 351, 59 S.Ct. 232, 83 L.Ed. 208; Sweatt v. Painter, 339 U.S. 629, 635, 70 S.Ct. 848.

of its people. But it is equally true that the police power, however broad and extensive, is not above the Constitution. When it speaks its voice must be heeded and it is the obligation of this court so to declare. But we need not labor the point for the precise question presented here is foreclosed by the decisions of the courts, both Federal and State. Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149; Tyler v. Harmon, 158 La. 439, 104 So. 200; Id., 273 U. S. 668, 47 S.Ct. 471, 71 L.Ed. 831; City of Richmond v. Dean, 4 Cir., 37 F.2d 712; affirmed 281 U.S. 704, 50 S.Ct. 407, 74 L.Ed. 1128; Shelley v. Kraemer, 334 U.S. 1, 11, 68 S.Ct. 836, 92 L.Ed. 1161; and the Courts of Georgia, Maryland, North Carolina, Oklahoma, Texas, and Virginia have also declared similar statutes invalid as being in contravention of the Fourteenth Amendment. Glover v. City of Atlanta, 1918, 148 Ga. 285, 96 S.E. 562; Jackson v. State, 1918, 132 Md. 311, 103 A. 910; Clinard v. City of Winston-Salem, 1940, 217 N.C. 119, 6 S.E.2d 867, 126 A.L.R. 634; Allen v. Oklahoma City, 1936, 175 Okl. 421, 52 P.2d 1054; Liberty Annex Corp. v. City of Dallas, Tex. Civ.App., 1927, 289 S.W. 1067; Irvine v. City of Clifton Forge, 1918, 124 Va. 781, 97 S.E. 310.

■ In Buchanan v. Warley, supra, the Supreme Court in considering an ordinance of the City of Louisville, which it held to be unconstitutional, said that Colored persons have the right to purchase property and enjoy and use the same without laws discriminating against them solely on account of color. In an effort to avoid the impact of this decision appellants insist that the Buchanan case involved the right to dispose of property and not, as in the case at bar, the right of occupancy. The Supreme Court of Louisiana, in considering an ordinance of the City of New Orleans in the case of Tyler v. Harmon, 158 La. 439, 104 So. 200, 205, also attempted to distinguish the Buchanan case on the same ground and found that the underlying reasons which prompted the Supreme Court to hold the ordinance of the City of Louisville unconstitutional were not pertinent to the ordinance of the City of New Orleans because there was nothing in the New Orleans

ordinance forbidding "a white man to sell his property to a colored man, or forbidding a colored man to sell to a white man" in any community or neighborhood. On that basis, the Supreme Court of Louisiana held the ordinance of the City of New Orleans valid in so far as it forbad Negro tenants to occupy defendant's cottages in a white community. On appeal, the Supreme Court reversed, finding the citation of Buchanan v. Warley, supra, sufficient to support its judgment. Harmon v. Tyler, 273 U.S. 668, 47 S.Ct. 471, 71 L.Ed. 831. The principle established in these cases was thereafter followed in City of Richmond v. Dean, 4 Cir., 37 F.2d 712; affirmed 281 U.S. 704, 50 S.Ct. 407, 74 L.Ed. 1128. And in the recent case of Shelley v. Kraemer, 334 U.S. 1, 11, 68 S. Ct. 836, 92 L.Ed. 1161, the Supreme Court in considering restrictions on the right of occupancy which had been created by private agreements again stated that legislation imposing restrictions on the right of occupancy solely because of color cannot be squared with the requirements of the Fourteenth Amendment.

■ We find no merit in appellant's further contention that the court below erred in excluding certain evidence of a social and economic character. This evidence was irrelevant and immaterial to the issue of constitutionality.

There being no error, it follows that the decree below must be and it is

Affirmed.

RUSSELL, Circuit Judge (dissenting).

The proposition that State law or ordinances are generally unenforceable when their operation is contrary to the Federal Constitution of course can not be disputed. However it is not true that every limitation or restriction of such a right is in all events subject to be struck down without determination of the law and facts then obtaining and giving rise to the enactment. In this case, the finding of the City Commission in its ordinance of August, 1949, which supplemented the general zoning ordinance of Birmingham of 1926, that in the prevailing situation "breaches of the peace, riots, destruction of property and life," which nei-

ther the City nor other law enforcement officers could prevent, would follow attempts to violate the zoning restrictions, was entitled to some consideration. Even if the ordinance with such findings was nevertheless *prima facie* invalid upon constitutional grounds, the enactment should not have been destroyed unless and until the Court found that no sufficient danger was present to justify the dire apprehension of the Commission or to support its enactment. The Court could not judicially know, contrary to the findings of the legislative body, whether conditions in Birmingham were as declared by such body, though it is to be hoped that such findings were and are exaggerated. However, if the findings were established by evidence, declining to enjoin the enforcement of the ordinance would only give primacy to true general welfare over private rights,—resulting from a determination of whose right should be subordinated, at least for the time being. To properly appraise the situation the Court should have heard the evidence offered in support of the legislative determination. Constitutionality may, and frequently does, depend upon particular circumstances. I disapprove the holding implying that whatever the danger to the public welfare, it must be suffered and endured when opposed by the assertion of a constitutional right to use one's property without restriction. I do not understand Buchanan v. Warley, 245 U. S. 60, 38 S.Ct. 16, 62 L.Ed. 149, to require such a holding.

Other constitutional rights have been restricted because of the circumstances in which they were sought to be exercised. There comes to mind Mr. Justice Holmes' oft repeated utterance in Schenck v. U. S., 249 U.S. 47, 39 S.Ct. 247, 249, 63 L.Ed. 470, that "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic", and the principle of clear and present danger announced following it. Vested property rights (also constitutionally protected) have been forced to yield to zoning ordinances which were determined not arbitrary or unreasonable. Hadacheck v. Sebastian, chief of police of Los Angeles, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348; Pierce Oil Corp. v. City of Hope, 248 U.S. 498, 39 S.Ct. 172, 63 L.Ed. 381; Standard Oil Company v. City of Tallahassee, 5 Cir., 183 F. 2d 410.

If the legislative finding that an emergency existed was to be overlooked or disregarded, the city should have been allowed to introduce evidence of the true situation. Thereupon the Court could have determined the foundation and extent of danger and adjudged accordingly.

On Petition for Rehearing

PER CURIAM.

Rehearing denied.

Russell, Circuit Judge, dissents.