**KANSAS CITY, MO. et al. v. WILLIAMS et al.**

**WILLIAMS et al. v. KANSAS CITY, MO. et al.**

Nos. 14664, 14666.

United States Court of Appeals
Eighth Circuit.

June 10, 1953.

Writ of Certiorari Denied Oct. 12, 1953.

See 74 S.Ct. 45.

David M. Proctor, City Counselor, and Benjamin M. Powers, Associate City Counselor, Kansas City, Mo. (John J. Cosgrove, Associate City Counselor, Kansas City, Mo., on the brief), for Kansas City, Mo., et al.

Carl R. Johnson, Kansas City, Mo., and Robert L. Carter, New York City (Almer T. Adair, Kansas City, Mo., Thurgood Marshall, and David E. Pinsky, New York City, on the brief), for Esther Williams et al.

Before SANBORN, JOHNSEN and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

Three Negro residents of Kansas City, Missouri, brought suit, individually and representatively, against the City and its Board of Park Commissioners, for declaratory and injunctive relief, to eliminate the racial discrimination alleged to exist in the denial to them and the other Negroes of Kansas City of the right to enjoy the swimming pool in Swope Park as a recreation facility.[1]

The District Court entered a judgment and decree in favor of the plaintiffs personally but held that they were not entitled to relief on a class basis. See Williams v. Kansas City, Mo., D.C., W.D.Mo., 104 F.Supp. 848. The City and the Park Board have appealed from the decision rendered against them, and the plaintiffs have cross-appealed from the denial of their request for class relief.

Swope Park is a general park and recreation area of Kansas City, owned by the City, maintained with public funds, and operated through a Board of Park Commissioners. Its extensive grounds (1800 acres), the excellent facilities which it contains, and the numerous diversions which are provided in it, have made it the prin-

---

1. The denial had been made on the basis of unwritten regulation or practice on the part of the Board of Park Commissioners, under the authority vested in the Board by the Charter of Kansas City to control, regulate and manage the parks and playgrounds of the City.

cipal outing, entertainment and relaxation center of Kansas City.

The recreational scheme of the Park has been made to include, among its elements of enjoyment, two golf courses, a boating pond, a zoo, a band pavilion, a "starlight" theatre, picnic conveniences, shelter houses, a swimming pool, and other features. All of these facilities are subject to being enjoyed equally by general visitors to the Park, Negroes as well as whites—all except the swimming pool and its incidents. That facility of the Park is not permitted to be used by Negroes. Only such visitors to the Park as are members of the white race are allowed admittance to it.

The swimming pool constitutes one of the popular elements in the Park's recreational system. The record shows that up to 8,000 persons have made use of it in a single day and evening.[2] The pool consists of three separate sections—a diving pool, a swimming pool, and a wading pool —with an adjunctive sand beach for sunbathing. It has been widely cited in the recreation world as a model of swimming-pool construction, and its facilities have been designed to meet the prescriptions of the Amateur Athletic Union (AAU) for the holding of competitive swimming and diving events.

In the general program of outing, recreation, entertainment and relaxation which the City and the Park Board have thus fostered in the Park, the calendar of members of the white race can be interspersed with diving, swimming, wading and sunbathing activities, but the stay of Negroes in the Park on a similar general visit can not. As has been indicated, Negroes are denied admittance to the existing pool on the ground of their race, and no other provision for diving, swimming, wading, or sun-bathing enjoyment has been made for them as a facility of the Park and as part of their outing visits to it.

Negroes, who go to the Park for a day of outing, attracted, as the City and the Park Board have intended, by its many facilities and by its varied recreation and entertainment opportunities, and who desire to have diving, swimming, wading or sun-bathing constitute an element in their outing program, must disrupt their stay in the Park, journey a distance of some 4½ miles from the Park to a pool maintained by the City as a general Negro swimming facility,[3] and then travel back, if they want to resume their activities at the Park. Members of the white race do not thus have to break the continuity of their stay at the Park and travel a distance of 9 miles, in order to engage in a swimming interlude, but are able to remain on for their picnic supper and to enjoy the other diversions of the Park, without any such disruption, loss of time and inconvenience.

The defense set up by the City and the Park Board to the action here was that the separate swimming pool which had been provided for Negro use, some 4½ miles distant from Swope Park,[4] constituted a substantially equal facility with the Swope Park pool, and that therefore it could not be claimed that any racial discrimination had been involved in refusing Negroes admittance to the Park pool—with the implication also intended that accordingly there could be none either in not alternatively having provided other equivalent diving, swimming, wading and sun-bathing facilities for Negroes in the Park itself as part of its recreational system, regardless of the position which Swope Park held in the community as a general recreational area or center, and regardless of the part which such facilities played as an

---

2. The pool has a bath-house structure capable of accommodating 3,000 persons, and the City's Superintendent of Parks testified that the pool itself similarly could accommodate this number of persons at one time.

3. The City likewise maintains another pool, elsewhere in the city, as a general swimming facility for its white population —smaller, older and less attractive than its general Negro pool. Four junior swimming pools—three for whites and one for Negroes—constructed from the same plans, are also maintained at various locations throughout the city.

4. The figure of 4½ miles is taken from the trial court's memorandum opinion. The brief of the City and the Park Board gives the distance from Swope Park to the Negro pool as 6½ miles.

element of enjoyment in the recreational program at the Park of other general visitors.

We shall not engage in a detailed comparison of the Negro pool, located some 4½ miles away from Swope Park, with the Park pool, as mere physical facilities. In the relationship of the latter pool to the broad recreational system which the City and the Park Board had set up in Swope Park, and to the position which the Park had thus come to have as a general recreation center, the failure to afford to Negroes the privilege of diving, swimming, wading and sun-bathing enjoyment, as one of the constituted elements in the Park's comprehensive recreational scheme, seems to us to make the question that is involved more than simply a matter of whether the Negro pool located some 4½ to 6½ miles away from Swope Park could be said to amount to a substantially equal facility with the Park pool.

■ As we have suggested, the Swope Park pool swimming facilities obviously had not been placed in the Park as a matter of abstract pool locationship but in relation to and because of its incidence in the Park's general recreational scheme. It was intended and served as one of the material elements of attraction and enjoyment in the general outing purposes for which the Park was maintained. In the special recreational status which Swope Park thus had, and with all members of the general public, Negroes as well as whites, having been accorded access to it on this basis, it would hardly constitute equal treatment legally, we think, for the City and the Park Board to provide material privileges and facilities for whites, in the general recreational system set up in the Park, which were not also provided for Negroes.

The situation here is not without analogy in nature and principle to that which existed in McLaurin v. Oklahoma State Regents, 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149, where a Negro student was admitted to a State University for educational purposes but restrictions were imposed upon him as to some of the privileges and facilities which were regularly subject to enjoyment by students of the University as incidents of their admission.

The admittance of Negroes to Swope Park, the same as whites, for enjoyment of it as a general recreation area or center, in accordance with the object for which it was maintained, but with a denial to the Negro of the privilege of engaging in diving, swimming, wading and sun-bathing activity, as one of the incidents of the comprehensive recreational program afforded by the Park to others on an outing occasion, would constitute in our opinion unequal treatment and illegal discrimination against the Negro in his right to enjoy Swope Park for what it had been made to become.[5] In the comprehensive outing program which had been developed in Swope Park there obviously was an inescapable autonomy of related use and complementary enjoyment in the elements and facilities of the Park's recreational system for purposes of general outing and recreation visits by the public to it. It does not therefore answer the question here to say that Negroes cannot complain of the fact that whites have been afforded the privilege of diving, swimming, wading and sun-bathing interludes in the program set up by the City and the Park Board in Swope Park for general outing and recreation visits, while Negroes have not, since Negroes, if they desired such an interlude in their Park outing, could disrupt their general visit to the Park, drive a distance of 4½ to 6½ miles to an outside facility, and then return to the Park to resume their right to enjoy equally with the whites such other elements and facilities as they had intended to make incidents of their stay.

■ On this basis, as we have suggested, it is not necessary to engage in a detailed comparison of the Negro pool, located some 4½ to 6½ miles away from Swope Park, with the Park pool, as mere physical facilities. The trial court did, however,

5. As we have previously emphasized, Swope Park was not a mere conventional park which had happened unrelatedly or abstractly to have been made the subject of a swimming pool location.

make such a comparison in its reported memorandum opinion, 104 F.Supp. 848, and concluded that, on the totality of differences existing in the physical structure, setting attractiveness, enjoyment attributes, etc., the two pools did not as a matter of fact constitute substantially equal facilities. One or two of the various elements of difference pointed out by the court may be given in illustration.

The Negro swimming pool had been built in 1939 at a cost of $60,000, and the Swope Park pool had been built in 1942 at a cost of over $534,000. The ratio of the Negro population of Kansas City to white is approximately 1 to 8, but the difference in the cost of the two pools was not simply one of structure size. It represented substantial expenditures on the Swope Park pool for special features in construction, appointments, conveniences and other incidents, directly contributive to the pleasures and satisfactions of a swimming occasion. Granting that the Negro pool was entitled physically to have the stamp of an excellent swimming facility, the Swope Park pool would in comparison have to be given the rank recreationally of a deluxe or blue ribbon facility.

Another difference between the two pools, in the opportunity for swimming enjoyment which they afforded, was that the Negro pool could accommodate only 250 persons at a time and its heavy use made necessary the waiting of turns and the imposing of a limitation upon the length of the swimming privilege. Users of the Swope Park pool were not subject to any such limitation of their swimming enjoyment. And on the basis of the total use which had been made of the two pools in the year preceding this suit, the Negro pool had provided each swimmer with an average water space through the season of only 6.44 square feet, while in the Swope Park pool swimmers had been able to enjoy an average water space of 13.39 square feet.

These and the many other differences pointed out by the trial court, which we shall not undertake to repeat, would make it impossible for us to say as a matter of law that the court's appraisal of the two pools as not constituting substantially equal facilities for swimming enjoyment was clearly erroneous.

The City and the Park Board therefore are not entitled to a reversal of the judgment and decree holding that there had been a violation of the Fourteenth Amendment and of the provisions of 8 U.S.C.A. §§ 41 and 43.

Other contentions of unconstitutionality have been made by plaintiffs, some of which were considered by the trial court and some of which were not. Under appellate judicial policy of dealing with constitutional questions only within the immediately necessary aspect of the particular legal situation, we shall not undertake to decide these contentions. Cf. Sweatt v. Painter, 339 U.S. 629, 631, 70 S.Ct. 848, 849, 94 L.Ed. 1114.

There remains for consideration the question presented by the cross-appeal of the plaintiffs, that the court erred in denying them class relief. The court was of the view that "it is the individual who is entitled to the equal protection of the law, and if he is denied a facility or convenience which, under substantially the same circumstances, is furnished to another citizen, the individual alone may complain that his constitutional privilege has been invaded, and he has no standing to sue for the deprivation of similar civil rights of others." 104 F.Supp. at page 857.

It is of course necessary generally that a plaintiff be able to show injury to himself in order to entitle him to seek judicial relief. He cannot be a mere volunteer and ask judicial intervention simply "because someone else may be hurt", but he "must present facts sufficient to show that his individual need requires the remedy for which he asks." McCabe v. Atchison, T. & S. F. Ry. Co., 235 U.S. 151, 162, 164, 35 S.Ct. 69, 71, 59 L.Ed. 169. But where he is able to establish his right to individual relief on this basis, he may also under certain conditions ask that the benefit of that adjudication be extended to others, where they constitute a class standing generally in the same legal situation, where they are so numerous as to make it impracticable to bring them all before

52

the court, and where the granting of such relief seems likely to serve some useful legal purpose—for example, preventing a multiplicity of suits.

■ Violations of the Fourteenth Amendment are of course violations of individual or personal rights, but where they are committed on a class basis or as a group policy, such as a discrimination generally because of race, they are no less entitled to be made the subject of class actions and class adjudication under rule 23, Federal Rules of Civil Procedure, 28 U.S.C.A., than are other several rights. And the District Courts, where the question has so arisen, have practically unanimously so recognized. See, e. g., Gonzales v. Sheely, D.C.Ariz., 96 F.Supp. 1004; Wilson v. Board of Sup'rs of La. State University, etc., D.C.La., 92 F.Supp. 986; Johnson v. Board of Trustees of University of Kentucky, D.C., E.D.Ky., 83 F.Supp. 707; Davis v. Cook, D.C., N.D.Ga., 80 F.Supp. 443; Lopez v. Seccombe, D.C., S.D.Cal., 71 F.Supp. 769—to give but a few examples. See also Alston v. School Board of City of Norfolk, 4 Cir., 112 F.2d 992, 997, 130 A.L.R. 1506; City of Birmingham v. Monk, 5 Cir., 185 F.2d 859.

■■ But the trial court here also denied class relief on another ground. It said in its memorandum opinion that "There is no evidence before this court that Negro citizens, other than plaintiffs, have ever tendered the admission price charged for swimming in the Swope Park pool and have been refused admittance solely because of their race or color." 104 F.Supp. at page 857. While this viewpoint is perhaps a bit technical and unrealistic in view of the Park Board's admitted policy of exclusion, yet a trial court is not without some measure of judgment as to whether a class adjudication can serve any useful purpose in a particular situation. We shall accordingly not undertake to disturb the denial of class relief made by the trial court on this latter basis—and especially so since there seems no reason to believe that the City and the Park Board will presume to give the adjudication made a personal operation as to the immediate plaintiffs only, in the situation involved. Affirmed.