D. ELWOOD CLINARD ET AL. v. CITY OF WINSTON-SALEM ET AL.

(Filed 2 February, 1940.)

1. Courts § 10—

The validity of a municipal ordinance imposing restrictions upon the occupancy of property solely upon the basis of racial status involves a Federal constitutional question, and in the absence of a direct holding on the subject by the Supreme Court of the United States, the question must be determined by the implications of its decisions.

2. Municipal Corporations § 37: Constitutional Law § 11—Municipality may not provide exclusive residential districts respectively for white and Negro races.

The municipal ordinance in question provided reciprocal inhibitions of occupancy of residential districts by members of the white and Negro races, fairly apportioned, the provision being inserted in a general zoning ordinance adopted under authority of chapter 250, Public Laws of 1923. *Held:* Restrictions upon occupancy necessarily involved restrictions upon the purchase and sale of property, or the *jus disponendi,* which is an inherent right in property, and the denial of such right solely upon the basis of race is unconstitutional. *Buchanan v. Warley,* 245 U. S., 60, cited as controlling.

3. Constitutional Law § 7—

A zoning ordinance limiting the uses of property solely on the basis of race is beyond the scope of police power, since the reserved police power of a state must stop when it encroaches on the protection afforded the citizen by the Federal Constitution.

4. Municipal Corporations § 40—

Injunction will lie to restrain the enforcement of a municipal ordinance at the instance of a citizen who is thereby deprived of a constitutional right.

APPEAL by plaintiffs from *Alley, J.,* at September Term, 1939, of FORSYTH.

Civil action to restrain enforcement of zoning ordinance in so far as it inhibits use or occupancy of plaintiffs' property by members of the Negro race.

The facts are not in dispute:

1. On 12 December, 1930, the board of aldermen of the city of Winston-Salem adopted a comprehensive zoning ordinance, under authority of ch. 250, Public Laws of 1923, and provided therein that the city should be divided into a number of zones or districts, with certain regulations and restrictions applicable to the use and occupancy of the property situate in each zone or district.

2. None of these restrictions is questioned in the present action, save and except the following provision in section 10 of the ordinance: "In 'A-1,' 'B-1' and 'C-1' residence districts, no building or part thereof shall be occupied or used by a person or persons of the Negro race," with certain exceptions not presently pertinent.

3. Section 11 of the ordinance provides: "In 'A-2,' 'B-2' and 'C-2' residence districts, no building or part thereof shall be occupied or used by a person or persons of the white race," with certain exceptions similar to those contained in the preceding section.

4. It is found as a fact, and not here challenged, that the areas or districts assigned to the different races, for their exclusive use and occupancy, with the designated exceptions, are fairly located and equitably apportioned according to the respective percentage of each race as compared with the total population of the city.

5. By amendment to the zoning ordinance adopted 10 March, 1939, changing the boundaries of some of the districts, several houses owned by the plaintiffs on Greenwood Avenue were transferred from one area to another and are now situated in a residential district designated for occupancy or use only by a person or persons of the white race.

6. The plaintiffs are members of the white race, except W. A. Kelly, Jr., who is a member of the Negro race. The plaintiffs of the white race have leased their houses on Greenwood Avenue to persons of the Negro race, and W. A. Kelly, Jr., occupies his house as a residence and desires to continue so to use it.

7. Notices to quit, or to vacate, have been issued and served upon the occupants of the premises by the municipal authorities, defendants herein.

This action was instituted 14 June, 1939, to restrain the defendants from enforcing the provisions of the zoning ordinance in the particulars above set out. A temporary restraining order was issued, but upon the return hearing the judge refused to make it permanent. However, upon notice of appeal being given, by consent the original restraining order

was continued in force until the matter could be disposed of on the appeal under authority of the Varser Act, ch. 58, Public Laws 1921.

*Elledge & Wells for plaintiffs, appellants.*
*Manly, Hendren & Womble and I. E. Carlyle for defendants, appellees.*

STACY, C. J. The question for decision is whether reciprocal inhibitions of occupancy of residential districts by members of the white and Negro races, fairly apportioned, but admittedly invalid if they stood alone, may be inserted in a general zoning ordinance adopted under authority of ch. 250, Public Laws of 1923. We think not. The law will not permit the indirect accomplishment of that which it directly forbids. *Glenn v. Comrs. of Durham,* 201 N. C., 233, 159 S. E., 439.

The precise question seems to be one of first impression, certainly in this jurisdiction, albeit some of the cases speak of "segregation ordinances" as zoning ordinances, notably *City of Richmond v. Deans,* 37 Fed. (2d), 712, and *Allen v. Oklahoma City,* 52 Pac. (2d), 1054. The case of *Bowen v. City of Atlanta,* 125 S. E., 199, dealt with a zoning ordinance, but the decision there was rested on authority of a segregation case.

This Court held in 1914 that an ordinance providing for the segregation of the white and Negro races in the city of Winston-Salem was void for want of legislative sanction. *S. v. Darnell,* 166 N. C., 300, 81 S. E., 338. The reasoning of the case, like that in some of the others hereafter noticed, went farther than the narrow ground upon which it was decided, and would seem to be helpful here. There, it was said: "Besides, an ordinance of this kind forbids the owner of property to sell or to lease it to whomsoever he sees fit, as well as forbids those who may be desirous of buying or renting property from doing so where they can make the best bargains. Yet this right of disposing of property, the *jus disponendi,* has always been held one of the inalienable rights incident to the ownership of property, which no statute will be construed as having power to take away. In *Bruce v. Strickland,* 81 N. C., 267, it is said: 'The *jus disponendi* is an important element of property and a vested right protected by the clause in the Federal Constitution which declares the obligation of contracts inviolable.' . . . This ordinance forbids a white man or a colored man to live in his own house if it should descend to him by inheritance and should happen to be located on a street where the majority of the residents happen to be of such different race. . . . We therefore hold that the ordinance was adopted without authority of law." Nothing was said in *Berry v. Durham,* 186 N. C., 421, 119 S. E., 748, which was intended to delimit the adumbrations of the *Darnell case, supra.*

It is conceded that the question posed by the record is one arising under the Federal Constitution and is to be determined by the implications of the decisions of the Court of last resort in the absence of a direct holding on the subject.

In 1917 the Supreme Court of the United States had before it an ordinance of the city of Louisville, Ky., which forbade persons of one color "to move into and occupy as a residence" a house in any block in which a majority of houses were already occupied by persons of the other color. This ordinance was held to be void in an action brought by a white man against a colored man for specific performance of contract to purchase a lot in a block where a majority of the residences were then occupied by white persons. The contract of purchase relieved the defendant from obligation to perform if he were not permitted under the law "to occupy said property as a residence."

The Court in deciding the case stated the broad question presented for determination to be: "May the occupancy, and, necessarily, the purchase and sale of property of which occupancy is an incident, be inhibited by the States, or by one of its municipalities, solely because of the color of the proposed occupant of the premises?" The question was answered in the negative. *Buchanan v. Warley,* 245 U. S., 60.

In arriving at this conclusion the Court adverted to the cases of *Pressy v. Ferguson,* 163 U. S., 256 (where it was held that a statute of Louisiana requiring railway companies carrying passengers to provide in their coaches equal but separate accommodations for the white and colored races, did not run counter to the Fourteenth Amendment), and the *Berea College case,* 211 U. S., 45 (where it was held that a statute of Kentucky, while permitting the education of white persons and Negroes in different localities by the same incorporated institution, prohibited their attendance at the same place, was within the reserved power of the Legislature to deal with the charters of its own corporations), and distinguished the principle upon which these cases were decided by quoting with approval from the opinion in *Carey v. Atlanta,* 143 Ga., 192, 84 S. E., 456: "In each instance the complaining person was afforded the opportunity to ride, or to attend institutions of learning, or afforded the thing of whatever nature to which in the particular case he was entitled. The most that was done was to require him as a member of a class to conform with reasonable rules in regard to the separation of the races. In none of them was he denied the right to use, control, or dispose of his property, as in this case. Property of a person, whether as a member of a class or as an individual, cannot be taken without due process of law." This same distinction finds full support in our own decisions as pointed out by *Hoke, J.,* in *Berry v. Durham, supra.* See *Missouri ex rel. Gaines v. Canada,* 305 U. S., 337; Annotation, 103 A. L. R., 713.

In *Harman v. Tyler,* 273 U. S., 668, decided in 1927, and *City of Richmond v. Deans,* 281 U. S., 704, decided in 1930, the former was reversed and the latter affirmed, without written opinion or further elaboration, on authority of the *Buchanan case, supra,* and this after the decision in *Euclid v. Ambler Realty Co.* (1926), 272 U. S., 365, where a general zoning ordinance was upheld which contained no provision for segregation of the races such as the one here challenged. *In re Appeal of Parker,* 214 N. C., 51, 197 S. E., 706. Thus, it appears that the Court has purposely refrained from modifying or delimiting its decision in the *Buchanan case, supra,* and has elected to regard it as the final pronouncement on the subject. It is broad enough to cover the instant case and is therefore controlling.

We are presently concerned, as was the Court in the *Buchanan case, supra,* with municipal restrictions upon the use and occupancy of property as affected solely by the racial status of the proposed occupant. The matter is regarded as beyond the reach of the police power. *Booth v. Illinois,* 184 U. S., 425; *Otis v. Parker,* 187 U. S., 606. "The reserved police power of the State must stop when it encroaches on the protection accorded the citizen by the Federal Constitution." *Women's Kansas City St. Andrew Society v. Kansas City, Mo.,* 58 F. (2d), 593.

The right of the plaintiffs to test the disputed provision by injunction is not controverted. Indeed, there is ample precedent for the action. *Loose-Wiles Co. v. Sanford,* 200 N. C., 467, 157 S. E., 432; *Advertising Co. v. Asheville,* 189 N. C., 737, 128 S. E., 149. See, also, concurring opinions in *Turner v. New Bern,* 187 N. C., 541, 122 S. E., 469, and *R. R. v. Goldsboro,* 155 N. C., 356, 71 S. E., 514.

We conclude that on the record as presented the plaintiffs are entitled to their prayer.

Error.