**MONK et al. v. CITY OF BIRMINGHAM et al.**

Civ. A. No. 6382.

United States District Court
N. D. Alabama, S. D.

Dec. 16, 1949.

Arthur D. Shores, Birmingham, Ala., Peter A. Hall, and David H. Hood, Jr., Birmingham, Ala., and Thurgood Marshall, New York City, for plaintiffs.

James Houston Willis, City Attorney, Thos. E. Huey, Jr., Asst. City Attorney, and Horace C. Wilkinson, Special Attorney, Birmingham, Ala., for defendants.

MULLINS, Chief Judge.

This is a class action brought by the plaintiffs, who are Negro citizens of the City of Birmingham, for and on behalf of themselves and all other Negro citizens of said City who are similarly situated and who own real estate in said City that is affected by certain zoning ordinances of said City. The zoning provisions involved are Sections 1604 and 1605 of the General City Code of Birmingham, 1944, and Ordinance No. 709-F. For convenience these code sections and ordinance may hereafter be referred to merely as zoning ordinances. The plaintiffs seek to declare said zoning

ordinances unconstitutional as being in violation of the Fourteenth Amendment to the Constitution of the United States, and seek injunctive relief against the further enforcement of the same. The defendants are the City of Birmingham, a municipal corporation, James W. Morgan, one of its city commissioners, and H. E. Hagood, its building inspector.

The two code sections constitute provisions of the general comprehensive zoning ordinance of the City of Birmingham adopted in 1926. With exceptions not here material, Section 1604 provides that no building or part thereof in certain residence districts shall be occupied or used by persons of the Negro Race; Section 1605 provides that no building or part thereof in certain other residence districts shall be occupied or used by persons of the white race. Ordinance 709-F, adopted on the 9th day of August, 1949, is in its nature supplemental to said code sections. This ordinance provides that it shall be a misdemeanor for a member of the white race to move into, for the purpose of establishing a permanent residence, or having moved into, to continue to reside in an area in the City of Birmingham generally and historically recognized at the time as an area for occupancy by members of the colored race, and likewise makes it a misdemeanor for a member of the colored race to move into, for the purpose of establishing a permanent residence, or having moved into, to continue to reside in an area in the City of Birmingham generally and historically recognized at the time as an area for occupancy by members of the white race. "Permanent residence," as defined in said ordinance, means the occupancy of a house or tenement for more than 24 hours. It is provided that the moving into for the purpose of establishing a permanent residence shall constitute a separate offense from remaining there, and that remaining in residence in a forbidden area for each 24 hour period shall constitute a separate offense. This ordinance also provides that the zoning ordinances of the City of Birmingham in effect at the time of its passage "substantially and fairly well delineate those areas historically and generally regarded as available for residences and occupation by members of the white and colored races."

Under the provisions of Sections 4 and 1600 of the defendant City's code, it is a criminal offense subject to fine and imprisonment, to violate any of the provisions of said code sections 1604 and 1605 and ordinance 709-F.

This Court takes judicial notice of the ordinances of the City of Birmingham. Title 7, Section 429(1), Code of Alabama 1940, as amended June 18, 1943.

The plaintiffs aver that they own certain real property in the City of Birmingham that is affected by and subject to the provisions of said zoning ordinances, the particular real property owned by each of said plaintiffs being particularly described opposite his or her name in paragraph 4 of the complaint. They further aver that sections 1604 and 1605 of said code and ordinance 709-F deny to plaintiffs, and others similarly situated, the right to occupy, enjoy and dispose of their property, in violation of the Fourteenth Amendment to the Constitution of the United States. The plaintiffs contend that said zoning ordinances are void as violative of the Fourteenth Amendment, because their right to use and occupy their properties is denied to them under the provisions of said ordinances solely on the basis of race or color; and plaintiffs aver that, unless they can obtain relief from this Court, the present zoning and classification of said property is tantamount to its confiscation. They aver that they are threatened with irreparable injury in the future and have no plain or adequate remedy at law other than by a declaration of rights and a temporary and permanent injunction against the further enforcement of said ordinances.

The complaint and the proof show and actual justiciable controversy existing between the plaintiffs and the defendants and that this is a proper class action.

The case was tried to the Court without a jury on oral testimony, written exhibits and certain stipulations of the parties, and after oral argument was duly submitted. Upon the evidence offered, the Court finds that each of the plaintiffs owns the particu-

lar real estate described opposite his or her name, as set out and described in paragraph 4 of the complaint; that each of the plaintiffs purchased said property prior to the filing of this suit for the purpose of using or occupying the same for residential purposes; that the property of each of the plaintiffs is affected by and subject to the provisions of said zoning ordinances and that neither the plaintiffs nor other members of the Negro race will be permitted to occupy said property as a home or for dwelling purposes solely because they are Negroes, all of said property being restricted to white residential use under the provisions of said ordinances.

The Court further finds that none of the plaintiffs will be permitted by said City to construct residences on said properties to be occupied by them or any member of the Negro race because said City will not issue permits for such construction solely because the provisions of said ordinances limit the occupancy of said properties to members of the white race.

The Court further finds that all of the properties of all of the plaintiffs are located in sections of said City that have been, and now are, by virtue of the provisions of said zoning ordinances, reserved exclusively for occupation by white persons; that it is the established and universal policy and custom of the officials of said City to deny building permits to construct residences for Negro occupancy in districts that are zoned for white occupancy, and this custom and policy on the part of said officials is frankly admitted by them in their testimony in this case.

The Court further finds that, if dwellings were erected on said properties, the plaintiffs or other Negroes could not occupy the same without becoming subject, under the provisions of said zoning ordinances, to criminal prosecution, fine and imprisonment solely on account of the fact that they are members of the Negro race.

The Court finds that the plaintiff, Mary Means Monk, is a Negro, a citizen of the United States, and a resident of the City of Birmingham, Alabama; that she is the owner of real property located in the City of Birmingham, Jefferson County, Ala-

bama, as described in paragraph 4 of the complaint, and that she paid $2,000 for said property and bought it for the purpose of building thereon a home for herself and family. The Court finds further that she employed a contractor to draw plans and specifications for said house and has paid him $2,000 on the construction price of the house, making a total of $4,000 actually expended by the plaintiff, Mary Means Monk, up to the date of this suit in and about the construction of the proposed dwelling. These plans and specifications were submitted by the plaintiff, Mary Means Monk, and her contractor to H. E. Hagood, Building Inspector of the City of Birmingham, who, after minor changes had been made in accordance with his instructions, approved the plans and specifications as complying with all of the requirements of the Building Code of the City of Birmingham. Under said Building Code no person can erect a building without first obtaining a permit therefor from the Building Inspector. The Court finds further that, after repeated requests for a permit to build on her said property made by the plaintiff, Mary Means Monk, and her contractor to the officials of said City authorized to issue building permits, a building permit was refused by them solely on the ground that the property was zoned exclusively for occupancy by members of the white race.

The Court finds further that unless injunctive relief is granted by this Court as prayed, the plaintiffs will suffer irreparable injury and damage, and that the plaintiffs do not have an adequate remedy at law.

Each of the plaintiffs is a Negro, a citizen of the United States, and a resident of the City of Birmingham, Jefferson County, Alabama, which is within the Southern Division of this court. The defendant, City of Birmingham, is a municipal corporation created and organized under the laws of the State of Alabama and exercising powers conferred upon it by said State. The defendant, James W. Morgan, is one of the Commissioners of the City of Birmingham, the Commissioners being the governing body of said City. As such Commissioner, he is the head of the department of the City empowered to grant or

deny building permits. H. E. Hagood is the Building Inspector of said City and as such is authorized to grant or refuse building permits and is the chief enforcement officer of its zoning ordinances.

When a party has complied with the valid provisions of a municipal building code, a suit attacking the constitutionality of an ordinance which prohibits the use or occupancy of property solely on the basis of race or color is not prematurely brought. Where a statute clearly and immediately affects property rights of a citizen, he has an immediate and present controversy with reference to the validity of such a statute without first subjecting himself to a criminal prosecution or other severe penalties provided by the statute. Terrace v. Thompson, 263 U.S. 197, 44 S. Ct. 15, 68 L.Ed. 255; Pierce v. Society of Sisters of the Holy Names of Jesus and Mary, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468; Euclid, Ohio, v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016.

It clearly appears that plaintiffs in this case, and other Negro citizens similarly situated, would be subject to punishment by a fine and imprisonment under the provisions of Sections 4, 1600, 1604 and 1605 of the General City Code of Birmingham, 1944, and Ordinance 709-F if they occupied their property for residential purposes. The mere existence of the zoning provisions attacked deprives the plaintiffs of the free use of their property and their right to sell it for Negro occupancy, and therefore an actual and presently justiciable controversy exists for declaratory judgment to determine the constitutionality of said zoning ordinances. Euclid, Ohio, v. Ambler Realty Co., supra; Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149, L.R.A.1918C, 210, Ann.Cas.1918A, 1201.

It is not amiss to say that this Court has heretofore, in the case of Matthews v. The City of Birmingham,[1] unreported, decided on the 4th day of August, 1947, declared two of the zoning provisions here involved, namely, Sections 1604 and 1605 of the General City Code of Birmingham, 1944, unconstitutional on the ground that said sections were violative of the due process clause of the Fourteenth Amendment to the Constitution of the United States. However, that case was not a class action and the injunctive relief granted merely ran in favor of the plaintiffs in that case.

Some 75 years ago the Supreme Court, in Hall v. DeCuir, 95 U.S. 485, 24 L.Ed. 547, recognized that colored persons were citizens of the United States and that they had the right to purchase, enjoy and use property without laws discriminating against them solely on account of race or color.

More than 30 years ago, in Buchanan v. Warley, supra, the Supreme Court nullified an ordinance of the City of Louisville similar in effect to the three ordinances here involved on the ground that they violated the due process clause of the Fourteenth Amendment to the Constitution. It is interesting to note that in that case the Supreme Court quoted from and relied upon a prior decision of the Supreme Court of Georgia which had nullified a zoning ordinance of the City of Atlanta that was based solely upon race or color. The Georgia Court had declared as to such an ordinance:

"The effect of the ordinance under consideration was not merely to regulate a business or the like, but was to destroy the right of the individual to acquire, enjoy, and dispose of his property. Being of this character, it was void as being opposed to the due-process clause of the Constitution." Carey et al. v. City of Atlanta et al., 1915, 143 Ga. 192, 84 S.E. 456, 460, L.R.A.1915 D, 684, Ann.Cas.1916E, 1151.

In the Buchanan Case it was argued, as here, that the City had a right to zone on a basis of race or color under its police power for the purpose of accomplishing segregation, preserving the public peace, and preventing the depreciation of property values and race hostility, but the Supreme Court said that the solution of such problems could not be promoted by depriv-

---

1. No opinion for publication.

ing citizens of their constitutional rights and privileges, and further said [245 U.S. 60, 38 S.Ct. 20]:

"It is urged that this proposed segregation will promote the public peace by preventing race conflicts. Desirable as this is, and important as is the preservation of the public peace, this aim cannot be accomplished by laws or ordinances which deny rights created or protected by the federal constitution.

"It is said that such acquisitions by colored persons depreciate property owned in the neighborhood by white persons. But property may be acquired by undesirable white neighbors or put to disagreeable though lawful uses with like results.

"We think this attempt to prevent the alienation of the property in question to a person of color was not a legitimate exercise of the police power of the state, and is in direct violation of the fundamental law enacted in the Fourteenth Amendment of the Constitution preventing state interference with property rights except by due process of law. That being the case, the ordinance cannot stand. Booth v. People of State of Illinois, 184 U.S. 425, 429, 22 S.Ct. 425, 46 L.Ed. 623; Otis v. Parker, 187 U.S. 606, 609, 23 S.Ct. 168, 47 L.Ed. 323."

In the same case the Court further declared:

"The federal Constitution and laws passed within its authority are by the express terms of that instrument made the supreme law of the land. The Fourteenth Amendment protects life, liberty, and property from invasion by the states without due process of law. Property is more than the mere thing which a person owns. It is elementary that it includes the right to acquire, *use,* and dispose of it. The Constitution protects these essential attributes of property. Holden v. Hardy, 169 U.S. 366, 391, 18 S.Ct. 383, 42 L.Ed. 780. Property consists of the free use, enjoyment, and disposal of a person's acquisitions without control or diminution save by the law of the land. 1 Blackstone's Commentaries (Cooley's Ed.), 127." (Emphasis supplied.)

In the Buchanan Case the Supreme Court recognized that the ownership of property is not absolute and unqualified; that the disposition and use of property could be controlled in the exercise of the police power, within constitutional limits, in the interest of the public health, convenience or welfare; that harmful occupations and legitimate businesses could be regulated in the interest of the public; and that certain uses of property could be confined to portions of a municipality other than residential districts, because of the impairment of the health and comfort of the occupants of neighboring property. But the Court held, in language that all who can read can understand, that an ordinance which attempted to nullify "the civil right of a white man to dispose of his property if he saw fit to do so to a person of color and of a colored person to make such disposition to a white person" was violative of the provisions of the Fourteenth Amendment to the Federal Constitution and did not constitute a legitimate exercise of the police power of the State. It is to be noted that the effect of the holding of the Supreme Court in this case was that the due process clause of the Fourteenth Amendment not only protects the free use, enjoyment, and disposal of property by colored persons, but that it likewise protects the free use, enjoyment, and disposal of property by white persons.

Subsequently, in the case of Euclid, Ohio, v. Ambler Realty Co., supra, the Supreme Court expressly recognized the right of a municipality to enact a general zoning ordinance in the interest of the general welfare, but in so far as the record discloses, the ordinance there upheld made no attempt to zone upon the basis of race or color.

After the Buchanan decision, the City of New Orleans enacted an ordinance making it unlawful for any white person to establish his home or residence in a Negro community, or portion of the city inhabited principally by Negroes or for any Negro to establish his home or residence in a white community or portion of the city inhabited principally by white people, "except on the

written consent of a majority of the persons of the opposite race inhabiting such community or portion of the city to be affected." This ordinance made each seven days' maintenance of a home or residence established in violation thereof a criminal offense. In the preamble of this ordinance it was said to be enacted to foster a separation of the white and Negro residence communities, "in the interest of public peace and welfare," and the ordinance was enacted under authority of acts of the Legislature of Louisiana enacted in 1912 and 1924. The Supreme Court of Louisiana, Tyler v. Harmon, 158 La. 439, 104 So. 200, upheld the New Orleans ordinance on the theory that it was a zoning ordinance within the police power of the municipality. In an able opinion, the Court attempted to distinguish its holding from that of the Supreme Court in the case of Buchanan v. Warley, on the theory that the latter case merely held that the Louisville ordinance was unconstitutional because it interfered with the right to sell property and constituted an unconstitutional restriction on the freedom of contract.

The Louisiana Court took the position that the New Orleans ordinance merely prohibited the use of property on the basis of race or color and placed no restrictions upon the right of ownership of property, and ruled that Buchanan v. Warley had no application. The Louisiana Court held, in effect, that the ordinance constituted merely a social regulation as to the use or occupancy of property, and, therefore, did not constitute a violation of the due process clause of the Fourteenth Amendment; that the segregation ordinance in question was only another kind of zoning ordinance within the police power of the city. When this case reached the Supreme Court, it was reversed per curiam, without written opinion, on the authority of Buchanan v. Warley, thereby indicating that the Supreme Court meant by its opinion in Buchanan v. Warley to protect not only the right to acquire and sell property but also the right to freely use and enjoy the same. Harmon v. Tyler, 1927, 273 U.S. 668, 47 S. Ct. 471, 71 L.Ed. 831. The defendants here rely upon the doctrine of the decision of

Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256, and also upon the proposition that the property of the plaintiffs in this case was subject to the restrictions of the zoning ordinances here challenged at the time they purchased the property. These arguments cannot stand because the Louisiana Court relied on both and was reversed notwithstanding.

In the case of City of Richmond et al. v. Deans, 37 F.2d 712, 713, the Circuit Court of Appeals for the Fourth Curcuit affirmed the decision of a District Court declaring unconstitutional an ordinance of the City of Richmond "To prohibit any person from using as a residence any building on any street between intersecting streets where the majority of residences on such street are occupied by those with whom said person is forbidden to intermarry by section 5 of an act of the General Assembly of Virginia entitled 'An act to preserve racial intregrity.'" The Court stated that they agreed with the judge below that the case was controlled by the decisions in Buchanan v. Warley and Harmon v. Tyler. The Court pointed out that while the Richmond zoning ordinance based its interdiction on the legal prohibition of intermarriage and not on race or color, that nevertheless it was controlled by the decisions of the Supreme Court in the cases last referred to, as the legal prohibition of intermarriage was itself based on race; and said that the question there involved in the final analysis was identical with that which the Supreme Court had twice decided in the cases cited. On the appeal of this case to the Supreme Court, City of Richmond v. Deans, 281 U.S. 704, 50 S.Ct. 407, 74 L.Ed. 1128, it was affirmed per curiam, without written opinion, on the authority of Buchanan v. Warley and Harmon v. Tyler, thus affirming beyond all doubt that the Supreme Court intended its decisions in those cases to hold that the right to acquire, own, dispose of, use and enjoy property could not be interfered with under the police power by ordinances attempting to zone on the basis of race or color.

As already indicated, the Supreme Court of Georgia was one of the first courts to nullify a zoning ordinance prohibiting the

right to use and occupy property on the basis of race or color. Georgia is not the only Southern State that has nullified such discriminatory ordinances. The highest courts of Virginia, North Carolina, Texas and Oklahoma have likewise declared ordinances similar in effect to those here under consideration unconstitutional, as being in violation of the Fourteenth Amendment to the Federal Constitution. Irvine v. City of Clifton Forge, 124 Va. 781, 97 S.E. 310; Clinard et al. v. City of Winston-Salem et al., 217 N.C. 119, 6 S.E.2d 867, 126 A.L.R. 634; Allen v. Oklahoma City et al., 175 Okl. 421, 52 P.2d 1054; Liberty Annex Corp. v. City of Dallas et al., 1926, Tex.Civ. App., 289 S.W. 1067; affirmed City of Dallas et al. v. Liberty Annex Corp., 1927, Tex. Com.App., 295 S.W. 591; City of Dallas et al. v. Liberty Annex. Corp., 1929, Tex. Civ.App., 19 S.W.2d 845.

The Supreme Court of North Carolina declared municipal restrictions upon use and occupancy of property on account of racial status to be beyond the reach of legitimate police power and held the rights of owners of property to be unconstitutionally invaded by such a zoning ordinance, although it fairly located and apportioned residential districts for members of both the white and Negro races. The fact that the unconstitutional provision is included in a comprehensive zoning ordinance does not render it valid. Clinard v. City of Winston-Salem, supra.

Although they are persuasive, I am not bound by the decisions of the several Southern states that have passed upon this question. But it is my duty to follow the three decisions of the Supreme Court of the United States conclusively holding municipal zoning ordinances based on race or color, such as those here involved, unconstitutional and void as being violative of the Fourteenth Amendment. As the last two decisions of the Supreme Court were per curiam, without written opinion, it appears, as said by the Supreme Court of North Carolina, "that the court has purposely refrained from modifying or delimiting its decision in the Buchanan case, and has elected to regard it as the final pronouncement on the subject." [217 N.C.

119, 6 S.E.2d 870] It is also to be noted that the last two decisions of the Supreme Court were rendered after it had upheld a general zoning ordinance in the Euclid Case.

Under the decisions it becomes my duty to declare each of the three ordinances here involved unconstitutional, as being violative of the Fourteenth Amendment, and to issue an injunction against the further enforcement of the same.